Filed 3/16/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

---

MADELINE SERAFIN,

     Plaintiff and Appellant,

v.

BALCO PROPERTIES LTD., LLC et al.,

     Defendants and Respondents.

A141358

(Contra Costa County
Super. Ct. No. C11-00916)

---

## I.

## INTRODUCTION

Madeline Serafin (Serafin) sued her former employer Balco Properties Ltd., LLC and related individuals and entities[1] (collectively Balco) alleging claims arising from her employment, including wrongful termination, harassment, and defamation. The trial court granted Balco's motion to stay the litigation until the completion of binding arbitration based upon an arbitration agreement Serafin signed when she was hired by Balco. The arbitrator ultimately found in Balco's favor on all issues, and the trial court granted Balco's petition to confirm the arbitration award, entering judgment in Balco's favor.

On appeal, Serafin argues the trial court erred in concluding her claims against Balco were subject to arbitration, contending she never entered into a binding agreement to arbitrate her employment-related claims. Alternatively, assuming the parties formed

---

[1] Balco is a real estate investment and management company located in Oakland, California. Balco is affiliated with defendant Bay Alarm Company (Bay Alarm), a burglar alarm company located in the Bay Area. Defendant Mollie Gilbert is a California resident and president of Balco.

an agreement to arbitrate, Serafin contends the arbitration agreement was unenforceable because it was procedurally and substantively unconscionable. We disagree, and affirm the judgment in Balco's favor.

## II.

## FACTS AND PROCEDURAL HISTORY

Serafin was employed by Balco, an affiliate of Bay Alarm, as director of property management on or about June 26, 2009. A few days after she began work, she executed a two-page arbitration agreement, entitled "MANDATORY ARBITRATION POLICY**."**

The terms of the arbitration agreement will be described in great detail during the course of this opinion. Vastly abbreviated, the arbitration agreement states, in pertinent part: "In the event of a disagreement or dispute between an employee and Bay Alarm, or any of its owners, manager, or other employees, arising out of or connected with his or her employment with Bay Alarm, it is the policy of Bay Alarm that the disputed matter shall be submitted to binding arbitration under the Rules of the American Arbitration Association applicable to employment disputes. All employees will be required to sign an acknowledgment stating that they understand this policy and will comply with it." Serafin's signature, dated June 29, 2009, appears at the bottom of page two stating, "I have read and understand this policy."

Balco terminated Serafin's employment on May 17, 2010. On January 19, 2011, Balco submitted a demand to the American Arbitration Association (AAA) to arbitrate a conversion claim against Serafin for return of $10,798.08,[2] which allegedly represented an overpayment of wages. Balco also included a copy of a civil complaint Serafin had submitted to Balco, but had not yet filed in court, alleging numerous employment-related claims.

---

[2] We note that this amount is stated as $10,798.08 and $10,978.08, respectively, in the record before us, representing a $180.00 discrepancy. Solely for the purpose of consistency in this opinion, we will adopt usage of the former amount. Resolution of this discrepancy is left to the parties and their respective counsel.

In April 2011, the parties selected an arbitrator. On April 15, 2011, Serafin initiated the underlying lawsuit in Contra Costa County Superior Court, alleging numerous employment-related causes of action against Balco, including retaliation, harassment, wrongful termination, unpaid earnings, breach of oral contract, common counts, conversion, and defamation.

On May 27, 2011, Balco filed a motion to stay pending litigation based on the arbitration agreement Serafin signed shortly after she was hired. Despite Serafin's opposition, the trial court granted Balco's motion to stay on August 23, 2011, and directed the parties to complete arbitration.

On June 28, 2013, following a six-day arbitration hearing, the arbitrator issued a 59-page "Arbitration Decision and Award." The arbitrator found in Balco's favor on all of Serafin's employment-related claims. The arbitrator also determined that Balco was entitled to return of the $10,798.08 overpayment from Serafin.

On January 15, 2014, the trial court confirmed the arbitration decision and award, and entered judgment in Balco's favor. On March 19, 2014, Serafin filed this appeal, claiming the trial court erred in ordering this case into arbitration.[3]

## III.

## DISCUSSION

### A. Existence of an Agreement to Arbitrate

Serafin contends no valid agreement to arbitrate employment-related disputes was formed because she never consented to arbitration. She claims she "promised nothing by her signature that she 'read and understand[s]' " Balco's mandatory arbitration policy.

---

[3] This appeal is properly before us. The trial court's order compelling arbitration is properly appealed following confirmation of an arbitration award. (*United Firefighters of Los Angeles v. City of Los Angeles* (1991) 231 Cal.App.3d 1576, 1582 [a party does not waive his right to attack the order compelling arbitration by proceeding to arbitration; the order is reviewable on appeal from a judgment confirming the award], cited with approval in *Peleg v. Neiman Marcus Group, Inc.* (2012) 204 Cal.App.4th 1425, 1437-1438 (*Peleg*).)

She goes on to argue, her "written acknowledgement of [Balco's] arbitration policy, therefore, carries no legal significance and does not create such a contract."

"The right to arbitration depends on a contract. [Citations.] Accordingly, a party can be compelled to submit a dispute to arbitration only where he has agreed in writing to do so. [Citation.]" (*Boys Club of San Fernando Valley, Inc. v. Fidelity & Deposit Co.* (1992) 6 Cal.App.4th 1266, 1271, fn. omitted.) In a motion to compel arbitration, "the party seeking arbitration bears the burden of proving the existence of an arbitration agreement by a preponderance of the evidence, and the party opposing arbitration bears the burden of proving by a preponderance of the evidence any defense, such as unconscionability. [Citations.]" (*Peng* v. *First Republic Bank* (2013) 219 Cal.App.4th 1462, 1468 (*Peng*); *Engalla v. Permanente Medical Group, Inc* . (1997) 15 Cal.4th 951, 972.)

"In California, '[g]eneral principles of contract law determine whether the parties have entered a binding agreement to arbitrate.' [Citations.]" (*Pinnacle v. Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236.) "An essential element of any contract is the consent of the parties, or mutual assent. [Citation.]" (*Donovan v. RRL Corp.* (2001) 26 Cal.4th 261, 270 (*Donovan*).) Further, the consent of the parties to a contract must be communicated by each party to the other. (Civ. Code, § 1565, subd. 3.) "Mutual assent is determined under an objective standard applied to the outward manifestations or expressions of the parties, i.e., the reasonable meaning of their words and acts, and not their unexpressed intentions or understandings. [Citation.]" (*Alexander v. Codemasters Group Limited* (2002) 104 Cal.App.4th 129, 141, disapproved on other grounds in *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 524.) Because there are no facts in dispute, the existence of a contract is a question we decide de novo. (*Sparks v. Vista Del Mar Child & Family Services* (2012) 207 Cal.App.4th 1511, 1519 (*Sparks*).)

Serafin cites numerous cases indicating that an employee's acknowledgment of receipt of an employee handbook, or an agreement to be bound by the handbook's contents generally, may not be enough to bind the employee to arbitrate under an

4

arbitration policy that is buried among a host of other policies.  For example, in *Mitri v. Arnel Management Co.* (2007) 157 Cal.App.4th 1164, the plaintiffs received and signed a general employee handbook which discussed the employer's arbitration policy.  (*Id.* at p. 1168.)  The court found this was insufficient to show mutual assent to arbitrate because the arbitration agreement provision contained in the handbook also placed the plaintiffs on notice that they would be required to sign and enter into a separate arbitration agreement with the defendant.  (*Id.* at p. 1167.)  However, no separate arbitration agreement was ever produced.  (*Id*. at p. 1168.)  As there was no signature from any of the employees specifically agreeing to arbitrate, the court concluded that there was no arbitration agreement.  (*Id.* at pp. 1172-1173.)

In *Romo v. Y–3 Holdings, Inc.* (2001) 87 Cal.App.4th 1153, the court held that no agreement to arbitrate resulted from the plaintiff's signature at the end of the employee's handbook, which contained an arbitration provision.  The court found that the handbook contained two separate and severable agreements: (1) the agreement to arbitrate which was the subject of one section; and (2) an agreement to be bound by the "benefits," "policies," "rules" and "procedures" contained within the remaining sections of the employee handbook.  (*Id.* at p. 1159.)  The plaintiff did not sign the arbitration section, but did sign an acknowledgment at the end of the other sections.  (*Ibid.*)  The court concluded that, because the employee had not signed the separate section about arbitration, the employee therefore did not agree to binding arbitration.  (*Id.* at pp. 1159-1160.)

In *Sparks*, *supra*, 207 Cal.App.4th 1511, the agreement to arbitrate was found in an employee handbook which contained a provision stating the employer could modify it at any time without notice, as well as a provision stating that the handbook was " 'not intended to create a contract of employment . . . .' " (*Id*. at p. 1516.)  In addition, the arbitration provision was buried in the handbook, and was not prominently distinguished from the other provisions or otherwise highlighted.  (*Id.* at p. 1519.)

The *Sparks* court concluded that no contract to arbitrate existed, focusing primarily on the language that the handbook was not intended to create a contract of

employment—which suggested that the handbook was "informational rather than contractual"—and on the fact that the acknowledgment signed by the employee "failed to point out or call attention to the arbitration requirement . . . ." (207 Cal.App.4th at p. 1520.) The court explained: "To support a conclusion that an employee has relinquished his or her right to assert an employment-related claim in court, there must be more than a boilerplate arbitration clause buried in a lengthy employee handbook given to new employees." (*Id.* at p. 1522; see also *Bianco v. H.F. Ahmanson & Co.* (C.D.Cal. 1995) 897 F.Supp. 433, 440 ["An employee handbook which states on its face that it 'is not intended to constitute or create, nor is it to be construed to constitute or create, the terms of an employment contract' cannot be a promise or a commitment to future behavior."]; *Ajamian v. CantorCO2e, L.P.* (2012) 203 Cal.App.4th 771, 805 (*Ajamian*) ["while Ajamian did have the Handbook containing the company's *policy* of arbitrating disputes, she never signed or agreed to the actual arbitration agreement in the Handbook . . . ." (original italics)].)

Here, in contrast to the above-cited cases, Balco's mandatory arbitration policy was not buried in a lengthy employee handbook. Instead, the arbitration policy was set out in its own two-page, easy-to-read document, separate from any other document that Serafin was required to execute as part of her employment. At the top of the document is clearly labeled "MANDATORY ARBITRATION POLICY" in capitalized lettering, unmistakably informing Serafin of the document's purpose. Balco's arbitration policy unequivocally states, "Any and all claims arising out of or in any way connected with your employment with Bay Alarm must be submitted to binding arbitration." The arbitration policy goes on to state, "All employees will be required to sign an acknowledgment stating that they understand this policy *and will comply with it*." (Italics added.)

Pamela Baptista, former "Human Resources Generalist" for Bay Alarm and Balco, submitted a declaration in this matter. She conducted Serafin's orientation. As part of the orientation, Baptista gave Serafin several important documents regarding Balco's employee policies and procedures, including the "MANDATORY ARBITRATION

6

POLICY." Baptista's practice was to explain the contents of each document and answer any questions. Serafin signed the document, in Baptista's presence, indicating she "read and understand[s] this policy." Consequently, this is not a case where the arbitration provision was hidden, or where the parties clearly intended the employee would be required to sign a separate and distinct document before an arbitration agreement would exist. Additionally, this is not a case where the document contained a disclaimer that it did not create contractual rights. Rather, this is a case where every effort was made to call Serafin's attention to the arbitration policy she was agreeing to at the time she signed the acknowledgement.

Next, Serafin contends any purported agreement between the parties is rendered "illusory" because Balco could "modify, revoke or change its [Mandatory Arbitration] Policy at any time." Generally, an employer has the right "to unilaterally alter the terms of employment, provided that the alteration does not violate a statute or breach an implied or express contractual agreement. [Citations.]" (*Schachter v. Citigroup, Inc.* (2009) 47 Cal.4th 610, 620.) While the arbitration agreement at issue here does not contain a provision indicating it is subject to modification, Serafin signed an acknowledgement for the general employee handbook which states: "I understand that, except for the employment at-will status, Bay Alarm Company can change any and all policies or practices at any time."

In *24 Hour Fitness, Inc. v. Superior Court* (1998) 66 Cal.App.4th 1199, the employee argued that the arbitration clause was "illusory" and "fatally lacking in mutuality" because it permitted the employer to modify unilaterally any provision in its personnel handbook, including the arbitration provision, at any time. (*Id.* at p. 1213.) The court rejected that argument, noting that the employer's discretionary power to modify the terms of the employment agreement "indisputably carries with it the duty to exercise that right fairly and in good faith. [Citation.]" (*Id.* at p. 1214.) So construed, the court held, "the modification provision does not render the contract illusory." (*Ibid.*)

Courts have followed *24 Hour Fitness* and concluded a binding arbitration agreement exists even though the employer retains the right to modify its personnel

7

policies. (See, e.g., *Peng, supra*, 219 Cal.App.4th at pp. 1473-1474 [following *24 Hour Fitness* and rejecting argument that provision for unilateral modification rendered the arbitration agreement illusory and lacking in mutuality]; *Serpa v. California Surety Investigations, Inc.* (2013) 215 Cal.App.4th 695, 707-708 (*Serpa*) ["the implied covenant of good faith and fair dealing is properly applied in this case and saves this arbitration contract from being illusory"]; *Peleg, supra*, 204 Cal.App.4th at p. 1465 [employer's ability to make unilateral modifications did not render arbitration agreement illusory because implied covenant of good faith and fair dealing would preclude any change that undermined employee's rights].) We agree with these cases. Because California law prevents a party from exercising a discretionary power, such as the power to modify, in bad faith or in a way that deprives the other party of the benefits of the agreement, Balco's right to modify its "policies or practices at any time" does not render the arbitration agreement illusory.

Serafin next points out the acknowledgment she signed stated *she* understood and agreed to be bound by the arbitration provision, but there was nothing indicating Balco also agreed to be bound. She claims the lack of Balco's signature makes the parties' agreement "illusory and lack[ing] consideration." However, the writing memorializing an arbitration agreement need not be signed by both parties in order to be upheld as a binding arbitration agreement. In *Banner Entertainment, Inc. v. Superior Court* (1998) 62 Cal.App.4th 348, the court explained, "it is not the presence or absence of a *signature* [on an agreement] which is dispositive; it is the presence or absence of evidence of an *agreement* to arbitrate which matters." (*Id.* at p. 361, original italics.) Evidence confirming the existence of an agreement to arbitrate, despite an unsigned agreement, can be based, for example, on "conduct from which one could imply either ratification or implied acceptance of such a provision." (*Ibid.*; *Craig v. Brown & Root, Inc.* (2000) 84 Cal.App.4th 416, 420-423 [despite absence of a signed writing acknowledging receipt of the memorandum and brochure containing the arbitration provision, the employee's continued employment constituted implied acceptance of the agreement].)

8

In this case, not only was the agreement authored by Balco, and printed on Bay Alarm's letterhead, but Balco's later conduct evinces an intent to be bound by the arbitration agreement when it invoked the arbitration process to recover the $10,798.08 overpayment allegedly made to Serafin, and when it filed the motion to stay Serafin's employment litigation and to compel arbitration.[4]

Just as with any written agreement signed by one party, an arbitration agreement can be specifically enforced against the signing party regardless of whether the party seeking enforcement has also signed, provided that the party seeking enforcement has performed or offered to do so. (Civ. Code, § 3388.) Serafin does not, and cannot, dispute that Balco has at all times performed all the duties required of it under the arbitration agreement. In this case, Balco has carried its burden in proving the arbitration agreement is a mutually binding agreement.

## B. General Unconscionability Principles

Serafin contends that even if this court finds that her signature created a valid agreement to submit disputes relating to her employment to binding arbitration, the arbitration agreement was unenforceable because it was "pervaded by substantive and procedural unconscionability." She principally claims that: (1) it is a contract of adhesion; (2) the AAA arbitration rules referenced in the agreement were not attached; (3) it lists only employee claims in giving examples of the specific types of claims subject to arbitration; and (4) it waives Serafin's statutory right to recover her attorney fees.

Unconscionability has both a procedural and a substantive component under California law. (*Roman v. Superior Court* (2009) 172 Cal.App.4th 1462, 1469 (*Roman*).) Procedural unconscionability focuses on the elements of oppression and surprise. (*Ibid.*) Oppression arises from an inequality of bargaining power which results in no real

---

[4] Balco's intent to be bound by the arbitration agreement is not undercut by the fact that, at the earliest stages of these proceedings, it threatened litigation to recover the alleged $10,798.08 overpayment to Serafin. It is not unusual for parties at an early stage in a dispute to assert that they intend to resolve all adversarial claims in court.

negotiation and an absence of meaningful choice.  Surprise involves the extent to which the terms of the bargain are hidden in a " 'prolix printed form' " drafted by a party in a superior bargaining position.  (*Ibid.*)

Substantive unconscionability focuses on the actual terms of the agreement and evaluates whether they create "overly harsh" or "one-sided" results."  (*Roman*, *supra*, 172 Cal.App.4th at p. 1469.)  "Substantive unconscionability 'may take various forms,' but typically is found in the employment context when the arbitration agreement is 'one-sided' in favor of the employer without sufficient justification, for example, when 'the employee's claims against the employer, but not the employer's claims against the employee, are subject to arbitration.' [Citations.]"  (*Id.* at p. 1469.)

Additionally, "[t]o be valid, at minimum the arbitration agreement must require a neutral arbitrator, sufficient discovery, and a written decision adequate enough to allow judicial review.  Further, it must include all remedies available in a judicial action and the employee may not be required to pay unreasonable costs or fees.  [Citation.]  Elimination of or interference with any of these . . . provisions makes an arbitration agreement substantively unconscionable."  (*Wherry v. Award, Inc.* (2011) 192 Cal.App.4th 1242, 1248, citing *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 102 (*Armendariz*).)

Both the procedural and substantive unconscionability must be present before a contract or term will be deemed unconscionable.  Both, however, need not be present to the same degree.  A sliding scale is applied so that " ' "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." ' [Citations.]"  (*Lhotka v. Geographic Expeditions, Inc.* (2010) 181 Cal.App.4th 816, 821; *Armendariz*, *supra*, 24 Cal.4th at p. 114.)  The burden is on Serafin, as the party challenging the arbitration agreement, to prove both procedural and substantive unconscionability.  (*Crippen v. Central Valley RV Outlet, Inc.* (2004) 124 Cal.App.4th 1159, 1164-1165.)

" 'Unconscionability is ultimately a question of law, which we review de novo when no meaningful factual disputes exist as to the evidence.' [Citation.]"  (*Malone v.*

*Superior Court* (2014) 226 Cal.App.4th 1551, 1562.)  In this case, the parties agree that there are no factual disputes and the de novo review standard therefore applies.[5]

## C.  Was the Arbitration Agreement Procedurally Unconscionable?

Procedural unconscionability exists when the stronger party drafts the contract and presents it to the weaker party on a "take-it-or-leave-it basis."  (*Ajamian*, *supra*, 203 Cal.App.4th at p. 796.)  Here, the arbitration agreement indisputably is a form contract of adhesion, which was presented to Serafin on a "take-it-or-leave-it basis."  (*Ibid*.)

However, the fact that the arbitration agreement is an adhesion contract does not render it automatically unenforceable as unconscionable.  Courts have consistently held that the requirement to enter into an arbitration agreement is not a bar to its enforcement. (*Legatree v. Luce, Forward, Hamilton & Scripps* (1999) 74 Cal.App.4th 1105, 1127 ["[T]he cases uniformly agree that a compulsory predispute arbitration agreement is not rendered unenforceable just because it is required as a condition of employment or offered on a 'take it or leave it' basis."]; *Graham v. Scissor-Tail, Inc.* (1981) 28 Cal.3d 807, 817, fns. omitted (*Graham*) [such adhesion contracts are an "inevitable fact of life for all citizens—business[person], and consumer alike"]; *Guiliano v. Inland Empire Personnel, Inc.* (2007) 149 Cal.App.4th 1276, 1292 [" '[T]he compulsory nature of a predispute arbitration agreement does not render the agreement unenforceable on grounds of coercion or for lack of voluntariness.' [Citation.]"].)

---

[5]  Currently pending before our Supreme Court is the issue whether the Federal Arbitration Act (FAA) (9 U.S.C. § 1 et seq.) as interpreted by the United States Supreme Court in *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. ___ [131 S.Ct. 1740] preempts state court rules invalidating mandatory arbitration agreements as unconscionable.  (See, e.g., *Sanchez v. Valencia Holding Co., LLC* (2011) 201 Cal.App.4th 74, review granted Mar. 21, 2012, S199119.)  But the FAA applies only to contracts which evidence "transaction[s] involving interstate commerce . . . ."  (*Shepard v. Edward Mackay Enterprises, Inc.* (2007) 148 Cal.App.4th 1092, 1101.)  Neither party on appeal suggests that the parties dispute has any relationship to interstate commerce; and, as Serafin flatly declares, there is nothing "in the record establishing that the [FAA] applies."  Accordingly, we do not consider the FAA as it may apply to preempt contrary state law.

11

In fact, where the arbitration provisions presented in a contract of adhesion are highlighted for the employee, any procedural unconscionability is "limited." (*Roman*, *supra*, 172 Cal.App.4th at pp. 1470-1471 [limited procedural unfairness where the arbitration agreement "was contained on the last page of a seven-page employment application, underneath the heading 'Please Read Carefully . . . .' "].) Here, the arbitration provisions were unquestionably highlighted for Serafin in the two-page, freestanding document, relating solely to arbitration, that she received and signed.

Nevertheless, Serafin also claims Balco's arbitration agreement was procedurally unconscionable because while it states that all "disputed matter[s] shall be submitted to binding arbitration under the Rules of the American Arbitration Association applicable to employment disputes," Balco did not actually attach a copy of the rules." Instead, the arbitration agreement states, "You can obtain a copy of these rules from the Human Resources department or directly from the American Arbitration Association.

In support of this argument, Serafin relies on this Division's decision in *Trivedi v. Curexo Technology Corp.* (2010) 189 Cal.App.4th 387 (*Trivedi*). *Trivedi* held an arbitration agreement was procedurally and substantively unconscionable for a number of reasons, including the failure to provide the employee with a copy of the applicable American Arbitration Association (AAA) rules. (*Id.* at p. 393.)

More recently, in *Tiri v. Lucky Chances, Inc.* (2014) 226 Cal.App.4th 231 (*Tiri*) this division pointed out in a footnote that *Trivedi* is just one of many authorities concluding an employer's "failure to provide [the employee] with a copy of the AAA (American Arbitration Association) rules supports a determination that the arbitration agreement as a whole was procedurally unconscionable . . . ." (*Id.* at p. 246, fn. 9.) However, that footnote also cites other cases that have found the failure to attach the applicable AAA rules alone did not render the agreement procedurally unconscionable. (*Ibid.*)

In *Tiri*, *supra*, 226 Cal.App.4th 231, this court credited the context in which the agreement was signed as being important to our fact-specific determination of whether a delegation clause, allowing an arbitrator to determine enforceability of the arbitration

agreement, was procedurally unconscionable. (*Id.* at p. 246.) This mode of analysis has been endorsed by our Supreme Court in *Sonic-Calabasas A. Inc. v. Moreno* (2013) 57 Cal.4th 1109. "As with any contract, the unconscionability inquiry requires a court to examine the totality of the agreement's substantive terms *as well as the circumstances of its formation* to determine whether the overall bargain was unreasonably one-sided." (*Id.* at p. 1146, italics added.)

Applying these principles to the arbitration agreement before us, we find *Trivedi* is distinguishable on it facts. Importantly, in *Trivedi* not only were the applicable arbitration rules not provided to the employee, but the agreement "was never discussed or explained at the time he signed it or later during his employment." (*Trivedi*, *supra*, 189 Cal.App.4th at p. 392.) In contrast, here the arbitration agreement informed Serafin that she could "obtain a copy of these rules from the Human Resources department or directly from the American Arbitration Association." Also, unlike *Trivedi*, there was a human resources representative present when she signed the arbitration agreement *specifically* to explain the document and answer any questions Serafin might have about it. Thus, we conclude these additional facts mitigate against a finding that the agreement was procedurally unconscionable simply because a copy of the applicable arbitration rules were not affirmatively provided to Serafin.

In conclusion, Serafin has shown a minimal degree of procedural unconscionability arising from the adhesive nature of the agreement. (See *Ajamian*, *supra*, 203 Cal.App.4th at p. 796.) But this is " 'the beginning and not the end of the analysis insofar as enforceability of its terms is concerned.' [Citation.]" (*Graham*, *supra*, 28 Cal.3d at p. 819.) Under the sliding-scale approach, Serafin is obligated to make a strong showing of substantive unconscionability to render the arbitration provision unenforceable. (*Ajamian*, *supra*, at p. 796.)

**D. Was the Arbitration Agreement Substantively Unconscionable?**

Serafin principally claims Balco's arbitration policy is substantively unconscionable because it lacked mutuality. An arbitration agreement lacks "basic fairness and mutuality if it requires one contracting party, but not the other, to arbitrate all

13

claims arising out of the same transaction or occurrences . . . .”**6** (*Armendariz, supra*, 24 Cal.4th at p. 120.)

Courts have found one-sided employer-imposed arbitration provisions unconscionable where they provide that employee claims will be arbitrated, but the employer retains the right to file a lawsuit in court for claims it initiates, or where only the types of claims likely to be brought by employees (wrongful termination, discrimination etc.) are the only ones made subject to arbitration. (See, e.g., *Higgins v. Superior Court* (2006) 140 Cal.App.4th 1238, 1253 [“the arbitration provision requires only [five siblings ranging in age from 21-14] to submit their claims to arbitration”]; *Stirlen v. Supercuts, Inc.* (1997) 51 Cal.App.4th 1519, 1540-1541 [“mandatory arbitration requirement can only realistically be seen as applying primarily if not exclusively to claims arising out of the termination of employment, which are virtually certain to be filed against, not by, Supercuts”]; *O'Hare v. Municipal Resource Consultants* (2003) 107 Cal.App.4th 267, 279 [employer “drafted a completely one-sided agreement compelling [employee] to arbitrate all of its claims, while allowing [the employer] to file a lawsuit on any claim it had against him”].)

Courts have also struck down arbitration provisions where the employer has set up onerous requirements for the type of claims that employees would likely bring. (*Zullo v. Superior Court* (2011) 197 Cal.App.4th 477, 487 [policy lacked mutuality because it required the employee, but not the employer, to respond to any communications regarding arbitration within 10 days or forfeit the employee's claim]; *Samaniego v. Empire Today, LLC* (2012) 205 Cal.App.4th 1138, 1147 (*Samaniego*) [arbitration provision had shortened limitations period on employee wage claims, attorney fee provision in favor of employer, and exempted declaratory and injunctive relief from

---

**6** As was pointed out in this court's decision in *Tiri*, *supra*, 226 Cal.App.4th at page 243, footnote 6, our Supreme Court has granted review of numerous cases involving the enforceability of arbitration agreements, including claims of unconscionability for lack of mutuality. (See *Baltazar v. Forever 21, Inc.,* review granted Mar. 20, 2013, S208345; *Leos v. Darden Restaurants, Inc.**,** review granted Sept. 11, 2013, S212511 [briefing deferred pending disposition of *Baltazar*].)

arbitration]; *Fitz v. NCR Corp.* (2004) 118 Cal.App.4th 702, 720 [employee's discovery rights severely limited to two depositions].)

Serafin contends that the language of the arbitration agreement at issue in this case is similarly one-sided and provides for arbitration of only those claims an employee is likely to pursue in court. The arbitration provision states that "[a]ny and all claims arising out of or in any way connected with your employment . . . must be submitted to binding arbitration." It then lists specific examples of claims typically brought by an employee (claims of racial, sexual or other discrimination or harassment; wrongful termination, nonpayment of wages, defamation), but states that the arbitrable claims "include, *but are not limited to*," those examples. (Italics added.)

Given this expansive language, we believe a broad interpretation of the employment-related claims that are subject to the arbitration agreement is appropriate, especially because we can see no indication in any other portion of the arbitration agreement that it applies only to claims brought by the employee. Indeed, where an arbitration agreement sets forth that "any and all" disputes between the parties will be arbitrated, courts (including this one) have found the agreement to be fully mutual in scope. (See *Tiri*, *supra*, 226 Cal.App.4th at p. 247 [rejecting argument arbitration agreement requiring arbitration for " 'any and all differences and/or legal disputes' " lacked mutuality]; *Serpa*, *supra*, 215 Cal.App.4th at p. 705 ["unmistakable mutual obligation . . . to arbitrate 'any dispute' arising out of her employment"]; *Roman*, *supra*, 172 Cal.App.4th at p. 1475 [because the agreement stated that "all disputes" will be submitted to arbitration, both plaintiff and her employer were obligated to submit claims to arbitration]; *Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1075, fn. 1 [although the court found the agreement to be unconscionable on another ground, it explained that the agreement applied equally to the employee and employer because it stated that it applied to " 'any claim, dispute, or controversy . . . between [the employee] and the Company' "].)

Furthermore, in stark rebuttal to Serafin's argument that the agreement did not create an obligation for Balco to arbitrate any employment-related claims, we once again

15

point out that it was Balco, Serafin's employer, who initiated arbitration after a dispute arose regarding the overpayment of wages. For all of these reasons, there clearly was a bilateral arbitration requirement binding both parties.

Serafin next claims the arbitration agreement was substantively unconscionable because it contained a provision indicating "[t]he party who incurs the expense will pay any other costs, such as attorney fees and witness fees." Under *Armendariz*, "when an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement or arbitration process cannot generally require the employee to bear any *type* of expense that the employee would not be required to bear if he or she were free to bring the action in court.*"* (24 Cal.4th at pp. 110-111, original italics.) Further, "it is evident that an arbitration agreement cannot be made to serve as a vehicle for the waiver of statutory rights created by the [Fair Employment and Housing Act (FEHA)]." (*Id*. at p. 101.) Serafin claims the arbitration agreement's attorney fees clause is substantively unconscionable because it wipes out her potential right to attorney fees as provided under FEHA.[7]

In so arguing, Serafin relies again on our decision in *Trivedi*, *supra*, 189 Cal.App.4th 387. In *Trivedi* we found a provision in an arbitration agreement that "allows for the recovery of attorney fees and costs by the prevailing party in an arbitration" to be substantively unconscionable because it improperly gave the arbitrator the power to assess attorney fees against a losing plaintiff regardless of whether the action was frivolous, unreasonable, without foundation, or brought in bad faith—as required by FEHA before a losing plaintiff will be required to pay attorney fees. (*Id*. at p. 394.)

---

[7] A recovery under FEHA is clearly not an issue in this case. However, the issue is still pertinent to our analysis of whether the arbitration agreement is substantively unconscionable. "The critical juncture for determining whether a contract is unconscionable is the moment when it is entered into by both parties—not whether it is unconscionable in light of subsequent events. [Citation.]" (*American Software, Inc. v. Ali* (1996) 46 Cal.App.4th 1386, 1391.)

16

By requiring both parties to bear their own attorney fees and costs, the provision before us also runs counter to FEHA which allows a successful plaintiff to recover attorney fees and costs from the employer (but does not similarly allow an employer to recover fees and costs from an employee in most cases). (See Gov. Code, § 12965, subd. (b).) Such a modification of California law is inappropriate under *Armendariz* as it has the effect of denying a plaintiff the rights and remedies he or she would have if he or she were litigating his or her claims in court. (Accord, *Serpa*, *supra*, 215 Cal.App.4th at pp. 709-710 [a provision requiring each party to bear his or her own attorney fees is unenforceable under *Armendariz*].)

As we pointed out in *Trivedi*, a court should sever an unconscionable provision unless the agreement is so "permeated" by unconscionability that it cannot be cured by severance. (189 Cal.App.4th at p. 398.) "An arbitration agreement can be considered permeated by unconscionability if it 'contains more than one unlawful provision . . . . Such multiple defects indicate a systematic effort to impose arbitration . . . not simply as an alternative to litigation, but as an inferior forum that works to the [stronger party's] advantage.' [Citation.]" (*Ibid.*) The overarching inquiry is whether the interests of justice would be furthered by severance. (*Ibid.*; see also *Samaniego*, *supra*, 205 Cal.App.4th at p. 1149.)

Here, early in the proceedings, the trial court exercised its discretion to sever the unconscionable attorney fee and cost provision from the arbitration agreement, indicating the "order staying the action pending arbitration is hereby conditioned on plaintiff being afforded the opportunity to seek in arbitration all statutory remedies provided for under FEHA, including an award of attorney fees, expert witness fees, and other litigation costs, should plaintiff prevail on her FEHA claims."

Serafin has failed to show that unconscionability so permeates the arbitration agreement that the flawed attorney fees and costs provision could not be severed and the balance of the agreement enforced. We note that other courts have severed similar unconscionable arbitration provisions and enforced the rest of the arbitration agreement. (See *Serpa*, *supra*, 215 Cal.App.4th at p. 710 [offending attorney fee provision (identical

17

to the one here) severed as it is "plainly collateral to the main purpose of the contract" and remainder of arbitration agreement enforced]; *Gutierrez v. Autowest, Inc.* (2003) 114 Cal.App.4th 77, 92 [endorsing severing arbitration costs provision and enforcing the balance of the agreement; the central purpose of the arbitration agreement "was not to regulate costs, but to provide a mechanism to resolve disputes [and] [b]ecause the costs provision is collateral to that purpose, severance was available"].) Consequently, we find that the severance of the offending attorney fees provision was within the discretion of the trial court.

Serafin lastly claims the arbitration agreement "improperly denied her right to judicial review." Although Serafin fails to develop this argument, she presumably is referring to language in the arbitration agreement indicating that the decision of the arbitrator will be "final and binding." However, the "final and binding" language of the arbitration agreement does not preclude judicial review of an arbitration award pursuant to Code of Civil Procedure sections 1286.2 and 1286.6. (*Corona v. Amherst Partners* (2003) 107 Cal.App.4th 701, 705 [where parties expressly agree arbitration award will be "final" and "binding," they are deemed to agree to limited judicial review of award by implication].)

In conclusion, under the sliding scale approach, "[b]ecause the degree of procedural unconscionability is minimal, the agreement is unenforceable only if the degree of substantive unconscionability is high. [Citation.]" (*Dotson v. Amgen, Inc.* (2010) 181 Cal.App.4th 975, 982; *Armendariz*, *supra*, 24 Cal.4th at p. 114.) Because the substantively unconscionable attorney fees provision was severed by the trial court before arbitration was commenced, no substantive unconscionability has been shown. Therefore, the trial court did not err in compelling Serafin to arbitrate her employment-related claims against Balco.

## IV.

## DISPOSITION

The judgment is affirmed.

18

_____

RUVOLO, P. J.

We concur:

_____

REARDON, J.

_____

RIVERA, J.

A141358, *Serafin v. Balco Properties, Inc.*

Trial Court: Contra Costa County Superior Court

Trial Judge: Hon. Laurel S. Brady

Counsel for Plaintiff and Appellant: Law Offices of Stephen M. Fuerch, Stephen M. Fuerch, Michael J. Greathouse

Counsel for Defendants and
Respondents: Littler Mendelson, Eugene Ryu

A141358, *Serafin v. Balco Properties, Inc.*