Filed 8/11/23  Wong v. Sitzer CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ELIZABETH WONG, as Trustee etc., | |
| Plaintiff and Appellant, | G061291 |
| v. | (Super. Ct. No. 30-2020-01145830) |
| MICHAEL F. SITZER et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from an order of the Superior Court of Orange County, Fred W. Slaughter, Judge.  Reversed.

Isaacs Friedberg, Jeffrey B. Isaacs and Jerome H. Friedberg for Plaintiff and Appellant.

Nemecek & Cole, Frank W. Nemecek and Jon D. Robinson for Defendants and Respondents.

\*          \*          \*

In this case involving an attorney, his law firm and their former client, plaintiff Elizabeth Wong[1] appeals from the denial of her motion to compel arbitration pursuant to Code of Civil Procedure section 1281.2.[2] The trial court denied plaintiff's motion despite her written consent to participate in an arbitration demanded by defendants Michael F. Sitzer and Sitzer Law Group (SLG), based on an arbitration clause in an unsigned SLG retainer agreement. Although plaintiff avers she never signed the retainer agreement, she contends the undisputed facts demonstrated, as a matter of law, the existence of a post-dispute agreement to arbitrate. Alternatively, she argues the trial court erred in concluding the principles of waiver and estoppel do not apply under the circumstances. We do not reach the latter contentions because we agree the written arbitration demand and plaintiff's written assent thereto, along with the parties' actions in the arbitral forum and in court during the roughly 10 months following filing of the demand, evidence an agreement to arbitrate as a matter of law. Accordingly, we reverse the order denying plaintiff's motion to compel arbitration. In doing so, we do not order the court on remand to compel arbitration because we leave it to the court to first determine whether and how to exercise the discretion afforded by section 1281.2, subdivision (c).

## FACTS

Plaintiff, a resident of the State of Washington, is the widow of a wealthy businessman who left her as trustee or successor trustee to various trusts when he died in 2010. Among the assets in one of the trusts were shares of stock which plaintiff sold for

---

[1]  Elizabeth Wong is a party to this action both in her individual capacity and in her capacity as trustee of a certain trust. Because the distinction is not relevant for purposes of this appeal, we refer to her in both capacities as plaintiff.

[2]  All further statutory references are to the Code of Civil Procedure unless otherwise stated.

2

roughly $70 million in 2016. The ex-wife of plaintiff's deceased husband believed she was entitled to a portion of the stock proceeds pursuant to a stipulated divorce judgment, so she filed a request for order in a pre-existing Orange County Superior Court dissolution matter (the family law matter). Sitzer, a longtime attorney of plaintiff's deceased husband, represented plaintiff in the family law matter. When Sitzer formed SLG, his firm took over representation of plaintiff in that case, along with the assistance of various co-counsel.

The family law matter was heavily litigated over the course of more than two years. In December 2019, the trial court issued a 117-page final statement of decision. It found against plaintiff on the underlying issues and issued a $2.5 million attorney fees award as a sanction against her, pursuant to Family Code section 271, based on litigation conduct on her side.[3]

In late January 2020, plaintiff terminated Sitzer and SLG and hired other counsel to represent her in what remained of the family law matter. A few weeks later, plaintiff received invoices claiming she still owed SLG approximately $1.38 million in fees.

---

[3] The trial court described the circumstances as "a [h]allmark [c]ase for §271 [s]anctions[.]" (Bold omitted.) It summarized its findings as follows: "Elizabeth and/or her longstanding attorneys have engaged in a culpable, deliberate, and focused campaign using economic warfare and the legal system that (1) frustrated the policy of the law to promote settlement of what should have been a straightforward post judgment RFO enforcement proceeding; and in doing so (2) unnecessarily increased the costs of litigation and caused undue delays to an elderly party. [¶] . . . This conclusion is based on evidence of sanctionable conduct in four categories identified by the court: (1) pursuing a scorched earth strategy using every unrelated legal theory imaginable; (2) refusals to cooperate, obstreperous conduct and dilatory actions; (3) repeated failures to adhere to court deadlines and orders; and (4) a consistent lack of civility and professional courtesy created a war-like mentality preventing an early resolution of the relevant issues."

Having not received payment on the outstanding balance, SLG filed suit against plaintiff, as an individual and as trustee of various trusts, in Los Angeles Superior Court in March 2020. SLG sought both a monetary award and imposition of an equitable lien on certain Los Angeles County real property assets owned by plaintiff and/or the trusts. Its contractual claims were based on an alleged 2007 engagement agreement between one of the trusts and Sitzer. After amending the complaint to specify the names of certain doe defendants, and before plaintiff filed a responsive pleading, SLG dismissed the case without prejudice.

Following SLG's voluntary dismissal of the Los Angeles Superior Court case, SLG filed a demand for arbitration against plaintiff and 12 other parties concerning the fees dispute. The demand, filed with the American Arbitration Association (AAA), attached a copy of an arbitration provision purportedly included in a 2010 SLG engagement agreement and specified the parties were obligated "to arbitrate this dispute as direct clients of [SLG], their agents or alter-egos, third-party beneficiaries, or otherwise, based on general equitable grounds." SLG subsequently filed two amendments to the arbitration demand which modified the responding parties and added substantive allegations.

The responding parties answered the arbitration demand at the end of June 2020. Everyone except plaintiff objected to the AAA's jurisdiction over the dispute. Plaintiff, in her individual capacity and as trustee for the named trusts, "consent[ed] to the jurisdiction of the AAA over th[e] dispute, but without waiving or limiting her right to seek interim relief in court."

4

On the same day she filed her answer, plaintiff filed a counterclaim against SLG in the arbitration proceeding. It alleged breach of fiduciary duties, professional negligence, fraud, negligent misrepresentation, unfair business practices, unjust enrichment, conversion, and slander, among other claims. Plaintiff sought damages, injunctive relief and declaratory relief. Included in the declaratory relief allegations, the counterclaim stated: "Elizabeth further contends that she is not bound by any valid and enforceable written, oral or implied contracts with SLG."

A week or so later, at the beginning of July 2020, plaintiff filed a complaint against Sitzer and SLG in Orange County Superior Court (the court action). Among other things, it alleged Sitzer and SLG had "recently commenced [an] extra-judicial campaign of asserting a UCC-1 security interest against [her] assets, which include[d] [them] issuing notice of an extra-judicial foreclosure sale of [certain of the] assets scheduled to occur [in less than one week]." The complaint clarified plaintiff was "bring[ing] [the] action as a proceeding ancillary to an underlying AAA arbitration for the purpose of seeking emergency provisional relief in the form of a TRO and preliminary injunction[,]" and it expressly requested all proceedings, except the provisional relief sought, be stayed pending outcome of the arbitration.

Sitzer and SLG, through counsel, demanded plaintiff dismiss the court action. They asserted plaintiff was trying "to circumvent the Arbitration and unlawfully invoke the jurisdiction of the court over claims [she had] already consented to arbitrate." And, they said dismissal would allow "the issues raised by it [to be] determined in the arbitration to which [plaintiff's counsel] [had], on behalf of [their] clients, already submitted."

5

Instead, plaintiff sought, and the trial court granted, a temporary restraining order. Among other things, the temporary relief enjoined Sitzer and SLG from taking any action to enforce or collect a debt based upon any purported security interest or lien against plaintiff or her assets, pending a final adjudication in the arbitration matter. The court concurrently issued an order to show cause regarding a preliminary injunction.

The hearing on the preliminary injunction was delayed for various reasons. Sitzer and SLG unsuccessfully tried to remove the case to federal court. When the matter was remanded to state court, the parties stipulated to a new preliminary injunction hearing date. Less than three weeks later, SLG and Sitzer rescinded their stipulation and filed a motion to dismiss the court action. In the motion, they acknowledged "plaintiff[] den[ied] [she was] a signator[] to, or otherwise bound by[,] the arbitration clause in SLG's [retainer] letter." They also asserted the court lacked jurisdiction over plaintiff's claims because she was improperly seeking interim injunctive relief from the court instead of doing so within the pending arbitration.

After the trial court finally held a hearing on plaintiff's request for a preliminary injunction in November 2020, it granted the provisional relief. It found plaintiff established a likelihood of success on the merits of her claims, demonstrated irreparable harm, showed the harm she would suffer if the motion was not granted was greater than the potential harm to defendants if it was granted, and established the balance of the equities weighed in her favor. Sitzer and SLG appealed from the order granting the preliminary injunction, but later dismissed the appeal prior to any briefs being filed.

While the above-described court proceedings were taking place, the parties slowly moved forward in the arbitration. They participated in an initial administrative conference, agreed a single arbitrator would preside over the dispute, deferred selecting

6

an arbitrator so they could engage in mediation, and selected a mediator and mediation date. When the trial court granted the preliminary injunction, Sitzer and SLG asked the AAA to immediately begin the arbitrator selection process in accordance with the AAA Commercial Rules, which they identified as the rules required by the parties' arbitration agreement. They also filed a jurisdictional objection to plaintiff's lien-based counterclaims.

In early December 2020, plaintiff filed an amended complaint in the court action. This led defendants to withdraw without prejudice their motion to dismiss which was directed at the original complaint.

A few weeks later, Sitzer and SLG filed an answer to plaintiff's operative counterclaim in the arbitration. They objected to the AAA's jurisdiction over the entirety of the counterclaim, contending plaintiff denied the existence of any arbitration agreement and, alternatively, waived any supposed arbitration right by filing the court action containing identical claims.

Between January and February 2021, the parties selected an arbitrator, the AAA confirmed the arbitrator, and the arbitrator scheduled a preliminary hearing for mid-April 2021. An email from Sitzer and SLG's counsel to the AAA concerning selection of the arbitrator included the following statement: "As previously stated and asserted, Claimant and Counter-Respondents continue to reserve all rights and previously asserted objections regarding jurisdiction, waiver, and their right to dismiss without prejudice . . . ." The AAA also confirmed the parties' belief that all jurisdictional issues would be submitted to the arbitrator for determination.

Six days prior to the scheduled preliminary hearing, SLG filed a notice of withdrawal without prejudice of the entire arbitration demand based on a purported lack of agreement between the parties for AAA arbitration. It claimed: (1) it filed the demand

7

believing the retainer agreement containing the arbitration provision had been signed by plaintiff; and (2) it was only after plaintiff filed an amended complaint in the court action denying the existence of any enforceable written, oral, or implied contracts with SLG, that it realized there was no enforceable arbitration agreement. The arbitrator, with agreement by the parties, subsequently ordered the arbitration to be held in abeyance while plaintiff sought a court order compelling arbitration.

Plaintiff filed a motion to compel arbitration in the trial court. She argued the parties had an implied-in-fact arbitration agreement resulting from Sitzer and SLG's arbitration demand and her response agreeing to the AAA's jurisdiction over the dispute, and evidenced by the parties' actions thereafter. Alternatively, she asserted they were bound to arbitrate pursuant to the legal doctrines of waiver and estoppel.

SLG opposed plaintiff's motion.[4] It took the position arbitration could not be compelled because it finally realized there was no signed pre-dispute arbitration agreement, and "[p]laintiff[] [did] not claim any binding post-dispute agreement to arbitrate." Alternatively, it argued plaintiff waived any right to arbitrate, any agreement to arbitrate was subject to recission, and compelling arbitration would "almost certainly result in 'conflicting rulings on common issue[s] of law or fact'" given that the other responding parties did not consent to the AAA's jurisdiction.

Plaintiff's reply reiterated her belief that waiver and estoppel precluded Sitzer and SLG from denying arbitration and that there was an implied-in-fact arbitration agreement. She also argued the court lacked discretion to deny arbitration under the circumstances. As for the retainer agreement containing the arbitration clause, she pointed out Sitzer and SLG were made aware that she did not sign the agreement no later than June 2020 when she filed her counterclaim stating as much.

---

[4]     Sitzer filed a belated joinder and supplemental brief in opposition to plaintiff's motion which the court declined to consider.

The trial court took the matter under submission following a hearing at which the parties orally argued the issues. In a subsequent detailed minute order, it denied plaintiff's motion. The court acknowledged SLG initiated an arbitration concerning its unpaid fees, thereafter Sitzer and SLG "participated in the administration of the arbitration for nearly 10 months," and they opposed interim injunctive relief by the court based on the then pending arbitration. However, it concluded this was insufficient to establish an implied arbitration agreement in light of the following: (1) SLG said it initiated the arbitration only because it believed it was bound to arbitrate pursuant to the retainer agreement, which it later discovered was never signed by plaintiff; and (2) Sitzer and SLG objected to the arbitration before the arbitrator was formally confirmed to preside over it. The court also found insufficient evidence to support estoppel and waiver of the right to a judicial forum.

Plaintiff timely appealed.

### DISCUSSION

Plaintiff argues the trial court erroneously concluded there is no arbitration agreement, Sitzer and SLG did not waive their right to a judicial forum, and they are not estopped from denying the existence of such an agreement. We need not reach the latter two contentions because we find the evidence establishes, as a matter of law, the existence of an agreement to arbitrate.

A. *Motion to compel arbitration principles and standard of review*

""Although '[t]he law favors contracts for arbitration of disputes between parties' [citation], "'there is no policy compelling persons to accept arbitration of controversies which they have not agreed to arbitrate . . . .'"" (*Avery v. Integrated Healthcare Holdings, Inc.* (2013) 218 Cal.App.4th 50, 59.) Thus, "'[u]nder "both federal and state law, the threshold question presented by a petition to compel arbitration is

9

whether there is an agreement to arbitrate.'""' (*Long v. Provide Commerce, Inc.* (2016) 245 Cal.App.4th 855, 861.) The party seeking to compel arbitration bears the burden of proving the existence of an arbitration agreement by a preponderance of the evidence. (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972.) An agreement to submit disputes to arbitration "is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract." (§ 1281.) Thus, once the existence of the arbitration agreement is established, the court may only deny arbitration if the opposing party demonstrates grounds for the agreement to not be enforced. (§ 1281.2; *Wagner Construction Co. v. Pacific Mechanical Corp.* (2007) 41 Cal.4th 19, 26.)

"'""There is no uniform standard of review for evaluating an order denying a motion to compel arbitration. [Citation.] If the court's order is based on a decision of fact, then we adopt a substantial evidence standard. [Citations.] Alternatively, if the court's denial rests solely on a decision of law, then a de novo standard of review is employed.'"" (*Franco v. Greystone Ridge Condominium* (2019) 39 Cal.App.5th 221, 227.) The latter includes situations in which the facts are undisputed and not in conflict. (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236 (*Pinnacle*); *Warfield v. Summerville Senior Living, Inc.* (2007) 158 Cal.App.4th 443, 446–447 (*Warfield*).)

B. *Agreement to arbitrate*

Plaintiff contends the trial court erred in concluding there was insufficient evidence of an agreement to arbitrate. From her perspective, the undisputed circumstances establish, as a matter of law, the parties agreed to arbitrate their dispute. Relying on a substantial evidence standard of review, Sitzer and SLG counter that there is ample evidence supporting the conclusion there was no written arbitration agreement. So their argument goes, the lack of a binding, authenticated written agreement signed by the

10

parties is dispositive because a court only has jurisdiction to compel arbitration if there is a written agreement to arbitrate. We agree with plaintiff.

"Arbitration 'is . . . a matter of contract between the parties' [citation], and, as such, whether particular disputes are subject to arbitration "'is strictly 'a matter of [the parties'] consent'"' [citations]." (*Douglass v. Serenivision, Inc.* (2018) 20 Cal.App.5th 376, 386.) The existence of a valid agreement to arbitrate is determined by applying California contract law, including principles of contract formation. (*Pinnacle, supra*, 55 Cal.4th at p. 236; *Bolter v. Superior Court* (2001) 87 Cal.App.4th 900, 906; see also *Toal v. Tardif* (2011) 178 Cal.App.4th 1208, 1219–1220 [court's role in determining existence of arbitration agreement is no different at prearbitration stage than at postarbitration stage].)

"'Mutual assent or consent is necessary to the formation of a contract. [Citations.] Mutual assent is determined under an objective standard applied to the outward manifestations or expressions of the parties, i.e., the reasonable meaning of their words and acts, and not their unexpressed intentions or understandings.'" (*ASP Properties Group, L.P. v. Fard, Inc.* (2005) 133 Cal.App.4th 1257, 1269.) Although an evaluation of mutual assent is generally a factual one, it may be determined as a matter of law when, as here, the facts are undisputed. (*DeLeon v. Verizon Wireless, LLC* (2012) 207 Cal.App.4th 800, 813.)

The 2010 retainer agreement, proposed and presumably drafted by Sitzer, contains an arbitration provision requiring the arbitration of any dispute "regarding legal fees or costs or [his] representation of [his client]." We recognize, as the trial court did, there is no evidence plaintiff signed that agreement. But, contrary to Sitzer and SLG's assertions, this does not end our inquiry. A signature is not a prerequisite for a valid arbitration agreement. (*Pinnacle, supra*, 55 Cal.4th at p. 236; *Serafin v. Balco Properties*

11

*Ltd., LLC* (2015) 235 Cal.App.4th 165, 176 (*Serafin*).)  Further, plaintiff never relied on the 2010 retainer agreement as the basis for her motion to compel.  Indeed, she did not rely on any pre-dispute arbitration agreement.  Instead, she asserted the existence of a post-dispute agreement to arbitrate.

There is significant evidence the parties agreed to arbitration after a controversy between them arose.  Although SLG initially filed its claims against plaintiff in Los Angeles Superior Court, it dismissed those claims and filed a demand for arbitration with the AAA.  The written demand included a brief description of the dispute, attached detailed claims and stated the arbitration provision from the 2010 retainer agreement required AAA arbitration of the dispute using the AAA's commercial arbitration rules.  Plaintiff responded in writing, "consent[ing] to the jurisdiction of the AAA over [the] dispute, but without waiving or limiting her right to seek interim relief in court."

Thereafter, over the course of roughly 10 months, the parties moved forward in the arbitration, relying on the AAA's commercial arbitration rules to guide the process.  They attended an administrative conference, SLG requested a non-Orange County venue, the parties stipulated to various administrative matters, they deferred selecting an arbitrator so they could engage in mediation, they selected a mediator and mediation date, they agreed the dispute would be ultimately heard by a single arbitrator, and they selected the arbitrator.  Throughout this time, SLG did not object to the AAA's jurisdiction over its asserted dispute or otherwise allude to such a potential jurisdictional issue; its only jurisdictional objection concerned plaintiff's counterclaims.

Concurrently, Sitzer and SLG repeatedly relied on the pendency of the arbitration as a basis for urging the trial court to deny plaintiff any judicial relief, including interim injunctive relief.  In doing so, and in their communications with

12

plaintiff's counsel on the subject, they emphasized plaintiff "already consented to arbitrate."

Because mutual assent to a contract may be express or implied, parties may accept an agreement to arbitrate through conduct. (See *Pinnacle, supra*, 55 Cal.4th at p. 236 [party's acceptance of arbitration agreement "may be implied in fact"]; *Serafin, supra*, 235 Cal.App.4th at p. 176 [implied acceptance of arbitration agreement may be shown by conduct].) Here, SLG's arbitration demand and plaintiff's assent to the AAA's jurisdiction formed the written basis of an agreement to arbitrate (see *Boys Club of San Fernando Valley, Inc. v. Fidelity & Deposit Co.* (1992) 6 Cal.App.4th 1266, 1271 [written agreement to arbitrate required]), and, as a matter of law, the parties' subsequent actions confirmed the existence of such an agreement.

Sitzer and SLG contend plaintiff's denial of any enforceable agreement between her and Sitzer or SLG necessitates rejection of the motion to compel. But such an argument is based on a misconstruction of plaintiff's allegations. In her counterclaim, she alleged "she is not bound by any valid and enforceable written, oral or implied contracts with SLG." The amended complaint in her court action alleged the same. These statements were in a section of the pleadings concerning declaratory relief and breach of contract, and they were followed by allegations about Sitzer and SLG's position on the dispute—namely, that plaintiff owes them for attorney fees and costs based on valid and enforceable written, oral and implied contracts. The context makes clear plaintiff's denial of enforceable contracts with Sitzer and SLG has nothing to do with the parties' post-dispute agreement to arbitrate which she sought to enforce through the motion to compel.

These circumstances make this case distinguishable from *City of Hope v. Bryan Cave, L.L.P.* (2002) 102 Cal.App.4th 1356 (*City of Hope*), and *Brodke v. Alphatec*

13

*Spine, Inc.* (2008) 160 Cal.App.4th 1569 (*Brodke*), on which Sitzer and SLG rely.  In the former, the court upheld the denial of a petition to compel arbitration because the movant was not a party to the arbitration agreement and did not demonstrate it was a third party beneficiary of the relevant contract.  (*City of Hope, supra*, at pp. 1370–1371.)  And in the latter, the party seeking to compel arbitration expressly denied the very existence of the agreement containing the arbitration clause which it sought to enforce.  (*Brodke, supra*, at pp. 1572–1573.)  Another panel of this court understandably concluded the movant could not seek to enforce a provision in an agreement it claimed was nonexistent.  (*Id*. at  pp. 1575–1576.)

Sitzer and SLG downplay their participation in the arbitration proceedings, claiming, inter alia, they "consistently" and "vehemently" objected to the AAA's jurisdiction "to act or rule on any matter."  The record proves otherwise.  In the months following the filing of the April 2020 arbitration demand, they repeatedly invoked the AAA's jurisdiction over their claims.  They concurrently objected to its jurisdiction over a portion of plaintiff's counterclaims, and asserted that jurisdictional issue was to be decided by the arbitrator prior to reaching the underlying substantive matters.  Their objection to jurisdiction over the entire dispute did not come until January 2021, at the earliest.  By that time, they had already been on notice of plaintiff's position concerning the 2010 retainer agreement and other alleged agreements for more than six months.

Equally unsupported by the record is Sitzer and SLG's claim that plaintiff's consent to arbitration was conditional.  In her response to the arbitration demand, plaintiff unconditionally consented to the AAA's jurisdiction over the dispute presented.  She did not expressly state or imply, therein or otherwise, the arbitration must be non-binding.  Nor did she condition her consent on the exclusion of all the other parties SLG attempted to bring into the arbitration.

14

C. *Waiver of right to arbitrate and section 1281.2(c) discretion*

Sitzer and SLG's final two contentions ask us to reach issues left untouched by the trial court: (1) whether plaintiff waived her right to arbitration; and (2) whether the court may and should exercise discretion, pursuant to section 1281.2, subdivision (c), to deny arbitration because of what they characterize as an extreme risk of inconsistent rulings due to potential litigation with third parties in different forums.[5] We address the former because it presents a pure question of law under the circumstances. (See *St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1196 [waiver of right to arbitrate is legal issue when facts are undisputed].) The latter is a matter for the trial court in the first instance on remand. (See *Daniels v. Sunrise Senior Living, Inc.* (2013) 212 Cal.App.4th 674, 680 [evaluation under section 1281.2(c) requires factual determination and decision whether, and how, to exercise discretion].)

---

[5]       Section 1281.2, subdivision (c), provides an exception to a court's obligation to compel arbitration upon determining the existence of an agreement to arbitrate. If the court determines "[a] party to the arbitration agreement is also a party to a pending court action or special proceeding with a third party, arising out of the same transaction or series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact[,]" the court has four options. (Code Civ. Proc., § 1281.2, subd. (c).) It "(1) may refuse to enforce the arbitration agreement and may order intervention or joinder of all parties in a single action or special proceeding; (2) may order intervention or joinder as to all or only certain issues; (3) may order arbitration among the parties who have agreed to arbitration and stay the pending court action or special proceeding pending the outcome of the arbitration proceeding; or (4) may stay arbitration pending the outcome of the court action or special proceeding." (§1281.2.)

"The Federal Arbitration Act (FAA) (9 U.S.C. § 1 et seq.) does not include a provision comparable to section 1281.2(c) and therefore requires courts to enforce written arbitration agreements even if there is pending litigation involving a third party that may result in conflicting rulings." (*Acquire II, Ltd. v. Colton Real Estate Group* (2013) 213 Cal.App.4th 959, 968, citing *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333, 341–344, 131 S.Ct. 1740, 1747–1748.) Neither party mentions the FAA in this appeal, so we need not determine whether it applies here.

Regarding waiver, Sitzer and SLG argue plaintiff waived any right she had to arbitrate in two ways. First, they focus on her "denial and repudiation of the existence of any agreement with SLG[.]" But, that argument fails for the same reasons previously discussed. Second, they claim she failed to file an application for a stay in conjunction with the court action. This misstates the record. At multiple points in time, including in her request for a temporary restraining order and in her complaint, plaintiff requested a stay of all court proceedings except those concerning provisional relief.

Our decision today goes no further than concluding, as a matter of law, plaintiff proved the existence of a written agreement to arbitrate.[6] We express no opinion regarding the full scope of the parties' agreement to arbitrate. And, assuming Sitzer and SLG continue to raise the argument, we leave it to the trial court on remand to determine whether section 1281.2, subdivision (c), applies, and, if so, how to exercise the discretion afforded thereby.

---

[6] Because we conclude a written agreement to arbitrate exists, we do not address plaintiff's alternative arguments that Sitzer and SLG waived their right to a judicial forum and they should be judicially estopped from denying the existence of such an agreement.

## DISPOSITION

The order is reversed.  Plaintiff is entitled to costs on appeal.


DELANEY, J.

WE CONCUR:


O'LEARY, P. J.


MOORE, J.