Filed 12/29/23  Mayo v. Discovery Health Services CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| JORDEN MAYO,<br><br>　　Plaintiff and Respondent,<br><br>　　v.<br><br>DISCOVERY HEALTH SERVICES, INC.,<br><br>　　Defendant and Appellant. | D081113<br><br><br><br>(Super. Ct. No.<br>37-2021-00044001-CU-WT-CTL) |

APPEAL from an order of the Superior Court of San Diego County, Keri G. Katz, Judge.  Affirmed.

Ballard Rosenberg Golper & Savitt, David Jonathan Fishman, John Joseph Manier and Teri A. Gibbs for Defendant and Appellant.

Hillier DiGiacco, Andrew E. Hillier and Francis Anthony DiGiacco for Plaintiff and Respondent.

Plaintiff and respondent Jorden Mayo sued her previous employer, defendant and appellant Discovery Health Services, Inc. (Discovery Health),

alleging, *inter alia*, discrimination based on gender identity and various Labor Code violations.[1]

Discovery Health petitioned to compel arbitration, which Mayo opposed. The court denied the petition. Discovery Health contends the court erred, as sufficient evidence showed Mayo agreed to arbitrate her claims.

Mayo seeks monetary sanctions against Discovery Health for filing a frivolous appeal. We affirm the court's order, but deny the sanctions motion.

FACTUAL AND PROCEDURAL BACKGROUND

Mayo alleged in her complaint that Discovery Health, which provides on-site wellness services to government agencies, schools, and employers, discriminated against her on grounds of gender identity and gender expression in violation of the Fair Employment and Housing Act (Gov. Code, § 12940, subd. (a)) and wrongfully terminated her in violation of public policy. She also alleged it violated labor laws regarding: overtime (Lab. Code, §§ 501, 1198); minimum wage payments (Lab. Code, §§ 1194, 1197, 1197.1); meal periods (Lab. Code, §§ 226.7, 512, subd. (a)); itemized wage statements (Lab. Code, § 226, subd. (a)); and payments for wages owed at time of separation (Lab. Code, §§ 201-203). She set out causes of action for unfair competition (Bus. & Prof. Code, § 17200 et seq.) and violation of the Private Attorneys General Act (PAGA) (Lab. Code, § 2698 et seq.).

---

[1] Mayo states in her complaint and opening brief that she "is a transgender individual, who identifies and expresses as female even though she was assigned the male gender at birth." She alleged that while employed at Discovery Health, she "was in the process of physically transitioning from male to female." We refer to Mayo using feminine pronouns throughout this opinion.

*Discovery Health's Petition to Compel Arbitration*

Discovery Health petitioned to compel arbitration. It relied extensively on a declaration by its vice president of clinical operations, Jorge Gonzalez, and attached exhibits so as to show that the parties entered into an arbitration agreement.[2] Gonzalez reviewed records of Mayo's July 27, 2020 to August 17, 2020 employment with Discovery Health. He explained that after Discovery Health accepts a new hire, the applicant, to complete the full employment application, must electronically acknowledge acceptance of documents and agreements online through a third-party website, Contingent Health Management (CHM), which Discovery Health hired for that purpose. Gonzalez stated that CHM houses "Discovery [Health] employee documents and assists with recruiting, hiring, onboarding and various other personnel practices. CHM maintains a cloud-based password-protected online portal [that] provides Discovery [Health] applicants with access to certain employment policies, documents, forms, and agreements and also gives them the ability to sign these documents electronically. [¶] The CHM system contains several built-in safeguards to prevent tampering and to ensure an applicant's privacy." (Some capitalization omitted.)

Gonzalez stated that upon creating a unique, private password online, and clicking "submit," an applicant is routed to a "candidate dashboard" that displays links to Discovery Health's employment application form, a skills checklist, and digitized employee documents, forms, and agreements. (Some capitalization omitted.) One such document, the "2019 employee handbook sign pages," includes a "Statement of Employee" and an arbitration agreement. (Some capitalization omitted.)

---

[2] Discovery Health also submitted a declaration by its counsel, who provided a foundation for various exhibits.

3

Gonzalez explained that the "Statement of Employee" provides: "I have received and read a copy of the 2019 employee handbook, and I acknowledge the following[:] . . . I understand that this handbook represents the current policies, regulations[.] . . . My signature below certifies that I understand the foregoing agreement and that it is the sole and entire agreement between Discovery [Health] and me." (Some capitalization omitted.) At the end of the statement, there are three printed lines for the date, an applicant's electronic signature, and printed or typed name. The date and printed or typed name are prepopulated for them. The statement of employee warns an applicant in all capital letters, "DO NOT SIGN UNTIL YOU HAVE READ THE ABOVE ACKNOWLEDGEMENT AND AGREEMENT."

According to Gonzalez, clicking "next" on the top of the webpage above the embedded "Statement of Employee" will navigate an applicant to a two-page, embedded arbitration agreement, which is the same one that appears in the employee handbook.[3] The CHM system will not automatically input

_____

[3] Gonzalez quotes the arbitration agreement in his declaration: "To the fullest extent allowed by law, any controversy, claim or dispute between employee and employer relating to or arising out of employee's employment or the cessation of that employment will be submitted to final and binding arbitration for determination in accordance with the JAMS employment arbitration rules [and] procedures, including any subsequent modifications or amendments to such rules, as the exclusive remedy for such controversy, claim or dispute. [¶] . . . Claims shall be brought in the parties' individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding. The arbitrator may not consolidate more than one party's claims, and may not otherwise preside over any form of a representative or class proceeding[.] . . . Possible disputes covered by the above include (but are not limited to) unpaid wages, breach of contract, torts, violation of public policy, discrimination, harassment, retaliation, or any other employment-related claims under laws including but not limited to, Title VII of the Civil Rights Act of 1964, the Americans With Disabilities Act,

4

anyone's electronic signature/record acknowledgement of the "Statement of Employee," or any other agreement, without an applicant completing the process to submit the agreement.

Gonzalez states: "The employee handbook includes two references to [Discovery Health's] arbitration agreement and related policies . . . one on page 9 where it lists Discovery Health's mutual/bilateral arbitration of disputes policy[4] and another on pages 65-66 where it includes a copy of the arbitration agreement." (Some capitalization omitted.) Clicking "next" on the top of the webpage above the embedded "Statement of Employee" will navigate an applicant to the two-page, embedded arbitration agreement, which is identical to the one included in the employee handbook.

the Age Discrimination in Employment Act, the California FairEmployment and Housing Act, the California Labor Code, and any other statutes or laws relating to an employee's relationship with his/her employer, regardless of whether such dispute is initiated by employee or employer. [¶] . . . BY AGREEING TO THIS BINDING ARBITRATION PROVISION, BOTH EMPLOYEE AND EMPLOYER GIVE UP ALL RIGHTS TO TRIAL BY JURY. This arbitration agreement is to be construed as broadly as is permissible under applicable law. The enforceability of this agreement shall be governed by the Federal Arbitration Act." (Some capitalization omitted.)

4    Discovery Health in its moving papers quotes the mutual/bilateral arbitration of disputes policy: "Alternative dispute resolution is an effective and efficient method of resolving differences between the company and employees out of court in the hope of avoiding the prolonged and often expensive process of traditional litigation. [¶] The company promotes a system of alternative dispute resolution that involves mutual, bilateral, binding arbitration, to resolve all disputes that may relate to or arise out of the employment relationship or the cessation of employment. Binding arbitration can provide mutual benefits to both the employee and the company including reduced expense, increased efficiency, and increased privacy. The arbitration procedure is more fully described in the 'comprehensive agreement, employment at-will and mutual/bilateral arbitration.' " (Some emphasis and capitalization omitted.)

5

According to Gonzalez, Mayo followed the same procedure described above. Gonzalez submitted documents showing that on July 26, 2020, Mayo visited Discovery Health's website and created her unique, private password. That same day, "she executed the arbitration agreement using the CHM system." She also "electronically signed/acknowledged the '2019 employee handbook sign pages,' which includes the arbitration agreement and statement of employee." (Some capitalization omitted.) Gonzalez concludes Mayo would have been unable to submit the full employment application and begin employment without signing all of the documents assigned to her by logging onto the system using her personal e-mail address and unique, private password.[5]

_____

[5] Gonzalez in his declaration explains: "There are three ways for an applicant to electronically sign/make a record of acknowledgment and signature of the '2019 employee handbook sign pages" once these agreements are assigned to them on the CHM system." (Some capitalization omitted.) He describes the ways as follows:

"A. Checking a box that reads 'sign' on the signature line of the '2019 employee handbook sign pages': Upon checking a box that reads 'sign' on '2019 employee handbook sign pages', a dialogue box appears that requires an applicant to enter their username and unique, private password again. The dialogue box includes a warning in bold, red writing that reads: 'Your document is not complete until you sign and click the "submit form" button.' . . . An applicant must then press a button titled 'submit form' on the top of the webpage above each embedded agreement to complete the signing of the agreements and to effectually sign/acknowledge them. Upon clicking 'submit form,' an applicant's home page will indicate that the '2019 employee handbook sign pages' are complete and electronically signed/acknowledged, and the home page will reflect this;

"B. Clicking 'submit form': An applicant can forego checking the 'sign' box and press 'submit form' on the top of the webpage above the embedded agreements. As in option (A), the '2019 employee handbook sign pages' will be effectually signed/acknowledged upon clicking the 'submit form,' and the home page will reflect this; or

Gonzalez concludes: "Even if the signature line remains blank on an agreement, that agreement is deemed 'signed/acknowledged' because of the extensive process set up by the CHM system wherein an applicant must first log onto the CHM system using their own unique, private password, then either (1) check the 'sign' box to enter their username and password; (2) click the 'next' button to click through the documents prior to clicking 'submit form'; or (3) click the 'submit form' button." (Some capitalization omitted.) Gonzalez continues: "When [Mayo] checked 'submit form' after inputting her username and unique password to log onto the CHM system, she agreed that she was electronically signing the statement of employee and arbitration agreement." (Some capitalization omitted.) Discovery Health added: "In signing the Statement of Employee, [Mayo] acknowledged receipt, understanding and accepting of the policies and regulations within the

---

"C. Clicking through all pages of the agreement, then clicking 'submit form': An applicant can click through the pages of the agreement by using the 'next' button on the top of the webpage above the embedded agreements. Clicking 'next' will automatically add a check mark to the 'sign' boxes on the agreements. An applicant must then click 'submit form' on the top of the page above the embedded agreements. As in options (A) and (B), the '2019 employee handbook sign pages' will then be effectually signed/acknowledged and the home page will reflect this." (Some capitalization omitted.)

Gonzalez adds: "Clicking 'submit form' on the top of the webpage above the embedded '2019 employee handbook sign pages' is the final step in collectively signing/making a record of acknowledging and signing the statement of employee and arbitration agreement, regardless of which of the three methods outlined . . . the user chose to employ to electronically sign the agreements." (Some capitalization omitted.)

Based on Gonzalez's declaration, Discovery Health argued, "An applicant cannot successfully submit the application without signing/accepting the '2019 employee handbook sign pages' in the application or all of the agreements, and other documents and forms, assigned to them." (Some capitalization omitted.)

7

employee handbook. . . . The arbitration agreement is listed in the table of contents of the employee handbook and is expressly incorporated therein[.]"

Discovery Health alternatively moved the court to stay the proceedings pending the United States Supreme Court's decision in *Viking River Cruises, Inc. v. Moriana* (2022) 596 U.S. 639 (*Viking River*). It reasoned, "If this court will not dismiss [Mayo's] PAGA claims by way of this motion, the decision in *Viking River* should inform the court that [she] effectively waived her right to bring PAGA claims when she signed the arbitration agreement with Discovery [Health] and that her PAGA claims must be dismissed from this action."[6] (Some capitalization omitted.)

*Mayo's Opposition*

In opposing the petition, Mayo submitted a declaration stating: "I accessed [Discovery Health's] online portal. When I did, I had access to [its] employee handbook. I do not recall reviewing anything in [it] that referred to an arbitration agreement nor do I recall being informed that I should review the employee handbook for information about an arbitration agreement." (Some capitalization omitted.) Mayo explained her understanding behind her signing the Statement of Employee electronically: "I believed that I was acknowledging receipt of the employee handbook I accessed prior to signing." She added, "I did not receive any notification through [Discovery Health's] online portal that I had not filled out and/or signed any documents that I was

---

[6]     Mayo argued that *Viking River, supra,* 596 U.S. 639 had no bearing on this case because here no valid arbitration agreement exists between the parties. The court did not address the request to stay the motion beyond pointing out that *Viking River* was already decided. On appeal, Discovery Health requests that we reverse the court's order and remand with directions that under *Viking River,* Mayo's individual claims be arbitrated and the case stayed pending arbitration. But as set forth below, we have no basis to reverse the order.

8

required to fill out or sign before submitting.  [¶]  When I started my job on July 27, 2020, no one at Discovery [Health] told me that I had not filled out and/or signed any documents that I was required to fill out or sign nor did anyone provide me with any documents to fill out or sign as part of my onboarding."

Mayo contended she did not electronically sign the arbitration agreement; rather, she signed only the Statement of Employee:  "The lack of a signature is striking given that the CHM system . . . clearly applies an electronic signature to documents that [Mayo] actually signed," like the Statement of Employee, which includes a statement that says, "electronically signed by [Mayo]." (Some capitalization omitted.)  She points out that by contrast, "if [she] had electronically signed the arbitration agreement, it would bear the same electronic signature . . . .  The fact it does not confirms that [she] did not sign [it]." (Some capitalization omitted.)

Mayo contended:  "The signed Statement of Employee does not bind [me] to arbitrate [my] claims; it does not so much as mention arbitration." She pointed out that the handbook by its express language was "not a contract."  She concluded that her "signature on the statement of employee cannot act as a signature on the arbitration agreement given that agreement's own signature lines." (Some capitalization omitted.)  Mayo objected to several statements in the declarations of Gonzalez and Discovery Health's attorney.

*Discovery Health's Reply*

Discovery Health in reply argued:  "[Mayo] could not have signed the 'employment handbook sign pages' without pressing submit after reviewing the statement of employee and arbitration agreement.  . . .  Pressing submit

9

was a manner in which [Mayo] could sign the agreements. . . . Once the agreements were submitted, the CHM system (a) indicated so by inputting a green check mark next to the words 'employment handbook sign pages' on the CHM system home page and (b) produced metadata showing that that the agreements were signed. . . . No one else could have submitted the agreements, but [Mayo]. . . . [Her] conduct plainly establishes her mutual assent to be bound by the agreements." (Some capitalization omitted.) Discovery Health also objected to several statements in Mayo's declaration.

*The Court's Ruling*

At a proceeding on the court's tentative ruling denying the petition, the court asked Discovery Health's counsel if he agreed that Mayo's signature did not appear on the arbitration agreement. Counsel conceded, "on the line that says 'signature,' we don't dispute that the line is blank."

Following argument from counsel, the court confirmed its tentative ruling. It overruled the parties' evidentiary objections. It ruled that although Discovery Health met its initial burden of producing prima facie evidence of a written agreement to arbitrate the controversy, Mayo also met her burden of challenging the authenticity of the arbitration agreement. Therefore, the burden shifted back to Discovery Health to establish with admissible evidence a valid arbitration agreement existed between the parties. The court found Discovery Health's evidence, including Gonzalez's declaration and the exhibits submitted, did not satisfy its burden: "It is undisputed that [Mayo] did not click the 'sign' box. Without any further evidence, the court is not persuaded by Discovery Health's argument that clicking on a 'next' button or a 'submit form' button constitutes signing the arbitration agreement. While the evidence may be sufficient to support a finding that [Mayo] was required to view the arbitration agreement as part of

10

the onboarding process, there is insufficient evidence to establish that [she] signed, either electronically or otherwise, the arbitration agreement." (Some capitalization omitted.)

The court also concluded that "there is insufficient evidence to establish that [Mayo's] signature on the 'statement of employee' at the end of the employee handbook satisfies the separate signature requirement on the arbitration agreement." (Some capitalization omitted.) It regarded as "irrelevant" Gonzalez's assertion "that the arbitration agreement is 'deemed' signed" by Mayo because of the extensive process set up by the CHM system, pointing out that in California, mutual assent is determined on an objective basis. Therefore, "the subjective intent of Gonzalez and/or Discovery Health, and evidence that the CHM system treats the statement of employee and the arbitration agreement as a singular document, have no bearing on the issue of whether there was mutual assent."[7] (Some capitalization omitted.)

## DISCUSSION

Discovery Health contends it presented sufficient undisputed evidence establishing "Mayo assented to the arbitration agreement's terms." (Emphasis and capitalization omitted.) It asserts: "Although the employee signature line on her arbitration agreement is blank, Mayo's printed name and signature date . . . both appear. . . . This could have happened *only if* someone using Mayo's personal email address and her unique, private password logged onto her CHM system account that day, as *only Mayo* admittedly did . . .—and *only if* that logged-in person (Mayo) clicked 'submit form' above the arbitration agreement, which the applicant is explicitly

---

[7] Discovery Health concedes in reply it does not challenge the court's relevance finding concerning Gonzalez's claim that Mayo was "deemed" to have signed the arbitration agreement.

11

instructed to do when they 'are ready to send the form' to Discovery [Health]."

A.  *Applicable Law*

California statutes create a "summary proceeding" for resolving petitions or motions to compel arbitration.  (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972.)  "The petitioner bears the burden of proving the existence of a valid arbitration agreement by the preponderance of the evidence, and a party opposing the petition bears the burden of proving by a preponderance of the evidence any fact necessary to its defense.  [Citation.]  In these summary proceedings, the trial court sits as a trier of fact, weighing all the affidavits, declarations, and other documentary evidence, as well as oral testimony received at the court's discretion, to reach a final determination."  (*Ibid.*)

"To carry [its] burden of persuasion the moving party must first produce 'prima facie evidence of a written agreement to arbitrate the controversy.'  [Citations.]  'If the moving party meets its initial prima facie burden and the opposing party disputes the agreement, then . . . the opposing party bears the burden of producing evidence to challenge the authenticity of the agreement.'  [Citations.]  If the opposing party produces such evidence, then 'the moving party must establish with admissible evidence a valid arbitration agreement between the parties.'  [Citations.]  Despite the shifting burden of production, '[t]he burden of proving the agreement by a preponderance of the evidence remains with the moving party.' "  (*Trinity v. Life Ins. Co. of North America* (2022) 78 Cal.App.5th 1111, 1120.)

The California Supreme Court "has clearly stated that a court, before granting a petition to compel arbitration, *must* determine the factual issue of 'the existence or validity of the arbitration agreement.'  [Citation.]  In this

12

way, a court's role, though limited, is critical. 'There is indeed a strong policy in favor of enforcing agreements to arbitrate, but there is no policy compelling persons to accept arbitration of controversies which they have not agreed to arbitrate and which no statute has made arbitrable.' " (*Toal v. Tardif* (2009) 178 Cal.App.4th 1208, 1219-1220.) " 'An "arbitration agreement is subject to the same rules of construction as any other contract . . . ." ' [Citation.] For any contract, the parties' consent is a basic element. [Citation.] In addition, the parties' consent must be communicated to one another. [Citation.] Thus, a party's consent is essential to 'the contractual underpinning of the arbitration procedure . . . .' [Citation.] '[T]he asserted absence of contractual consent renders arbitration, by its very definition, inapplicable to resolve the issue.' " (*Id.* at p. 1221.)

"A party's acceptance of an agreement to arbitrate may be express, as where a party signs the agreement. A signed agreement is not necessary, however, and a party's acceptance may be implied in fact [citation] or be effectuated by delegated consent [citation]. An arbitration clause within a contract may be binding on a party even if the party never actually read the clause." (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development* (*US*)*, LLC* (2012) 55 Cal.4th 223, 236.)

" 'There is no uniform standard of review for evaluating an order denying a motion to compel arbitration.' " (*Carlson v. Home Team Pest Defense, Inc.* (2015) 239 Cal.App.4th 619, 630.) "[T]he existence of an enforceable arbitration agreement is established under state law principles involving formation, revocation and enforcement of contracts generally." (*Banner Entertainment, Inc. v. Superior Court* (1998) 62 Cal.App.4th 348, 357.) Where the facts are undisputed, the reviewing court assesses de novo whether a valid agreement to arbitrate was formed. (*Serafin v. Balco*

13

*Properties Ltd., LLC* (2015) 235 Cal.App.4th 165, 173.) When, as here, the court's order denying a motion to compel arbitration is based on the court's finding that petitioner failed to carry its burden of proof, the question for the reviewing court is whether that finding is erroneous as a matter of law. (*Juen v. Alain Pinel Realtors, Inc.* (2019) 32 Cal.App.5th 972, 978-979; see also *Sonic Manufacturing Technologies, Inc. v. AAE Systems, Inc.* (2011) 196 Cal.App.4th 456, 465 [where trier of fact concludes that the party with the burden of proof fails to carry the burden, it is "misleading" to characterize the standard of review as one of substantial evidence].) " 'Specifically, the question becomes whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding." ' " (*Juen*, at pp. 978-979; see also *Almanor Lakeside Villas Owners Assn. v. Carson* (2016) 246 Cal.App.4th 761, 769 [same].)

B. *Analysis*

Discovery Health supported its petition to compel by submitting two electronic documents (a statement of employee that Mayo signed and an arbitration agreement that she did not sign). The court concluded the absence of Mayo's signature on the arbitration agreement sufficed to show she did not agree to arbitrate her claims. Discovery Health's evidence was not uncontradicted and unimpeached as a matter of law; rather, the court found it was insufficient to compel a finding of contract formation. (*Juen v. Alain Pinel Realtors, Inc., supra,* 32 Cal.App.5th at pp. 978-979.) Specifically, Gonzalez's declaration regarding the CHM System and how Discovery Health's new employees are processed for employment using that system allowed the court to infer that if Mayo had agreed to arbitrate her claims, she would have signed the arbitration agreement electronically, just as she did

14

with the statement of employee. Under the objective standard of ascertaining mutuality of assent in contract formation (*Serafin v. Balco Properties Ltd., LLC, supra,* 235 Cal.App.4th at p. 173), Mayo's failure to sign the arbitration agreement leads to a rational inference she did not agree to it.

It is true, as Discovery Health argues without elaboration, that binding California authority holds "mutual assent may be demonstrated without a formal signature." However, the case Discovery Health relies on for that proposition, *Craig v. Brown & Root, Inc.* (2000) 84 Cal.App.4th 416, is unavailing here. That court cited evidence the employer sent the employee a memorandum informing her of the employer's new dispute resolution program, emphasized "IT APPLIES TO YOU," and explained "[i]t will govern all future legal disputes between you and the Company." (*Id.* at p. 419.) Unlike the arbitration agreement provision in the Discovery Health handbook, the memorandum in *Craig v. Brown & Root, Inc.* established in and of itself the employer's dispute resolution program, and did not include an express requirement that its employees sign an arbitration agreement. Therefore, *Craig v. Brown & Root, Inc.* is inapposite.

Discovery Health also relies on case law stating an individual does not need to read the arbitration agreement to be bound by it. (*24 Hour Fitness, Inc. v. Superior Court* (1998) 66 Cal.App.4th 1199, 1215.) However, in that case, the employee did sign the agreement, and the court ruled the signature was binding regardless of whether the employee read the document. By contrast, Discovery Health concedes Mayo did not sign the arbitration agreement.

Discovery Health argues that by signing the Statement of Employee, Mayo agreed to the arbitration agreement. Although it recognizes the Statement of Employee "does not mention arbitration," it concludes that the

15

statement of employee "establishes the applicant has received and read the handbook . . . , which pointedly draws the reader's attention to the arbitration agreement by listing it in the table of contents." (Some capitalization omitted.)[8]

In rejecting a similar argument, one court pointed out: "Nothing in the acknowledgment forms notified [the employee] either that the Handbook contained an arbitration clause or that his acceptance of the Handbook constituted a waiver of his right to a judicial forum in which to resolve his wage and hour claims. [Citation.] Since the Handbook 'was informational rather than contractual' and [the employer] failed to call attention to the

---

[8]   The Statement of Employee that Mayo electronically signed states:

"I have received and read a copy of the 2019 Employee Handbook, and I acknowledge the following:

"I understand that this handbook represents the current policies, regulations, and benefits and that except for employment at-will status, any and all policies or practices can be changed at any time by the Company. The Company retains the right to add, change, or delete benefits, policies and all other working conditions at any time (except the policy of 'at-will employment', which may not be changed, altered revised or modified unless done so in writing signed by the President of the Company.)

"I further understand that nothing in this handbook creates or is intended to create a promise or representation of continued employment and that my employment position, and compensation at the Company are at-will and may be changed or terminated at the will of the Company. I understand that I have the right to terminate my employment at any time, with or without cause or notice, and that the Company has a similar right. I further understand that my status as an 'at-will' employee may not be changed except in writing signed by the President of the Company.

"My signature below certifies that I understand the foregoing agreement and that it is the sole and entire agreement between the Company and me. It supersedes all prior agreements, understandings, and representations (whether written or oral) concerning my employment with Discovery Health Services.

"DO NOT SIGN UNTIL YOU HAVE READ THE ABOVE ACKNOWLEDGEMENT AND AGREEMENT."

16

arbitration requirement in the acknowledgment form, [the employee] should not be required to arbitrate. [Citation.] . . . 'To support a conclusion that an employee has relinquished his or her right to assert an employment-related claim in court, there must be more than a boilerplate arbitration clause buried in a lengthy employee handbook . . . . At a minimum, there should be a specific reference to the duty to arbitrate . . . in the acknowledgment of receipt form signed by the employee.' " (*Mendoza v. Trans Valley Transport* (2022) 75 Cal.App.5th 748, 786.)

Discovery Health's claim lacks merit in light of the fact the statement of employee that Mayo signed does not refer to an arbitration agreement. We cannot and will not create a term of a contract between the parties that the evidence does not show was ever agreed to by the parties. (Code Civ. Proc., § 1858 ["In the construction of a statute or instrument, the office of the Judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted"]; accord, *Mitri v. Arnel Management. Co.* (2007) 157 Cal. App.4th 1164, 1173.) We therefore conclude the trial court did not err by denying the motion to compel arbitration.

## II. *Sanctions Motion*

Mayo contends that in this appeal, Discovery Health attempts "another bite at the apple," claiming it "has now had five chances (the original motion to compel arbitration, the trial court reply brief, the trial court hearing, the appellant's opening brief and the appellant's reply brief) to identify a single piece of legal authority that would support its positions" that Mayo agreed to arbitrate her claims. (Some capitalization omitted.) She seeks an award of sanctions in the amount of $40,620 for her attorney fees incurred.

Although we acknowledge that some of Discovery Health's arguments are a rehash of unsuccessful arguments made below and do not adequately

17

address the trial court's analysis, we cannot deem all of them as frivolous. "[A]n appeal should be held to be frivolous only when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit." (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650.) Courts must use this power "most sparingly to deter only the most egregious conduct" given the potential chilling effect in taking an appeal. (*Id.* at pp. 650-651.) Because we cannot say that any reasonable attorney would find this appeal totally and completely without merit, we deny the sanctions request.

## DISPOSITION

The order is affirmed. Mayo shall recover her costs on appeal.

O'ROURKE, J.

WE CONCUR:

HUFFMAN, Acting P. J.

KELETY, J.