Filed 7/11/24  James v. Knolls West Post Acute CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JOANNA JAMES, | |
| Plaintiff and Respondent, | G063478 |
| v. | (Super. Ct. No. CIVDS1923374) |
| KNOLLS WEST POST ACUTE, LLC, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from an order of the Superior Court of San Bernardino County, David S. Cohn, Judge.  Reversed and remanded with directions.

Seyfarth Shaw, Timothy M. Rusche, Kiran Aftab Seldon and Peter J. Choi for Defendant and Appellant.

James Hawkins, James R. Hawkins, Christina M. Lucio and Mitchell J. Murray for Plaintiff and Respondent.

1

Defendant Knolls West Post Acute, LLC (Knolls West) appeals after the trial court denied its motion to compel to arbitration plaintiff Joanna James's individual claim seeking civil penalties under the Labor Code Private Attorneys General Act of 2004 (PAGA) (Lab. Code, § 2698 et seq.).  We reverse.  As explained *post*, Knolls West met its initial burden of producing evidence the parties had entered into an arbitration agreement of that claim, thereby shifting the burden of producing evidence of its existence and/or enforceability to James.  Because James did not produce any evidence creating a factual issue regarding the existence and/or enforceability of that agreement against her by Knolls West, the trial court erred by denying the motion to compel arbitration.

FACTUAL AND PROCEDURAL BACKGROUND

James filed a complaint against Knolls West seeking civil penalties under PAGA for its alleged violations of various wage and hour laws.  Knolls West filed a motion to compel arbitration, under the Federal Arbitration Act (FAA) (9 U.S.C. § 1 et seq.) (the motion).  The motion sought to compel arbitration of James's individual PAGA claim pursuant to *Viking River Cruises, Inc. v. Moriana* (2022) 596 U.S. 639, based on the arbitration agreement she signed at the beginning of her employment with Knolls West.  Knolls West produced a copy of that written arbitration agreement (the agreement) which, under the heading "Voluntary Mutual Agreement to Arbitrate Claims," provides "Spring Valley Post Acute, and all of its related entities and subsidiaries (hereinafter 'Company') and the undersigned employee ('Employee')" agree to arbitrate all disputes the Company may have against "Employee" or that "Employee may have against Company, its subsidiaries or affiliated entities."  (Boldface and underscoring omitted.)  The final page of the agreement bears James's signature, under the heading "Employee," and the signature of Knolls West's "Payroll/HR MGR," identified as the "Signature of Authorized *Company* Representative."  (Italics added.)

2

The motion was also supported, inter alia, by the declaration of Knolls West's human resources director Kristin Amirian, who declared: (1) In April 2018, James was hired by Knolls West to work as a certified nursing assistant; (2) As part of the employee onboarding process, James was given the opportunity to review the agreement by which Knolls West and James agreed to submit claims arising out of James's employment with Knolls West to arbitration; (3) The agreement is a standalone document that was not part of an employee handbook; (4) James signed the agreement; and (5) Knolls West and Spring Valley Post Acute (Spring Valley) are affiliated entities.

The motion was further supported by the declaration of Adrian Dehghanmanesh who is the chief financial officer for Meridian Management Services which manages skilled and assisted living facilities in California, including Knolls West and Spring Valley. He declared, inter alia, Knolls West is related to, and an affiliated entity of, Spring Valley as they are limited liability companies which share identical members and are both managed by Meridian.

James filed an opposition to the motion. In her opposition, she did not deny having signed the agreement upon the commencement of her employment with Knolls West, or that she signed the agreement by which she and Knolls West intended to submit claims arising out of her employment with Knolls West, including her instant individual PAGA claim, to arbitration. Instead, she argued the agreement was unenforceable against her by Knolls West because it (1) was not referenced by name in the body of the agreement; (2) was neither a related entity of Spring Valley, nor a third-party beneficiary of the agreement; and (3) had waived the right to compel arbitration. In a footnote in her opposition, James stated she "dispute[d] that the Arbitration Agreement is a standalone document and not part of an Employee Handbook." James did not offer any evidence in support of her opposition to the motion.

Following a hearing, the trial court issued a statement of decision denying the motion. In the statement of decision, the court noted James did not dispute her

3

individual PAGA claim fell within the scope of claims to be arbitrated under the agreement or that she and an authorized representative of Knolls West signed the agreement. The court explained it denied the motion, however, because the body of the agreement stated it was between "Spring Valley Post Acute, and all of its related entities and subsidiaries . . . and the undersigned employee," did not include a signature on behalf of Spring Valley, and did not mention Knolls West except on the signature page. On that basis, the court concluded there did not appear to be any agreement between James and Spring Valley under which Knolls West "could seek to enforce non-party rights."

The court also concluded "insofar as [Knolls West] could claim to be the *actual* contracting party because of its signature," the agreement appeared to the court to be "cobbled together" and, in any event, Knolls West failed to prove it is a related entity or subsidiary of Spring Valley with standing to enforce the agreement against James. The court added, had it needed to reach the issue, it would have rejected James's waiver argument, stating if "an agreement were shown to exist and assuming [Knolls West] had standing to enforce it," James "fail[ed] to demonstrate waiver" of Knolls West's right to compel arbitration of her individual PAGA claim. Knolls West timely appealed.

## DISCUSSION

### I.

### GOVERNING LEGAL PRINCIPLES

"'Both the California Arbitration Act (Code Civ. Proc., § 1280 et seq.) and the FAA [Federal Arbitration Act] (9 U.S.C. § 1 et seq.) recognize ""arbitration as a speedy and relatively inexpensive means of dispute resolution"' and are intended '"to encourage persons who wish to avoid delays incident to a civil action to obtain an adjustment of their differences by a tribunal of their own choosing."' [Citation.]" [Citations.] The fundamental policy underlying both acts "is to ensure that arbitration agreements will be enforced in accordance with their terms." [Citations.] [¶] Arbitration

4

is therefore a matter of contract.'" (*Franco v. Greystone Ridge Condominium* (2019) 39 Cal.App.5th 221, 226–227 (*Franco*).)

"The principles governing petitions to compel arbitration are well established. Public policy favors contractual arbitration as a means of resolving disputes. [Citation.] But that policy ""'does not extend to those who are not parties to an arbitration agreement, and a party cannot be compelled to arbitrate a dispute that he [or she] has not agreed to resolve by arbitration.'"'" (*Espejo v. Southern California Permanente Medical Group* (2016) 246 Cal.App.4th 1047, 1057 (*Espejo*).)

Code of Civil Procedure section 1281.2 provides in relevant part: "On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party to the agreement refuses to arbitrate that controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists." Rule 3.1330 of the California Rules of Court provides: "A petition to compel arbitration or to stay proceedings pursuant to Code of Civil Procedure sections 1281.2 and 1281.4 must state, in addition to other required allegations, the provisions of the written agreement and the paragraph that provides for arbitration. The provisions must be stated verbatim or a copy must be physically or electronically attached to the petition and incorporated by reference." (Cal. Rules of Court, rule 3.1330.)

The trial court is thereafter to employ a summary process in determining whether the parties had agreed to arbitrate their dispute. (*Gamboa v. Northeast Community Clinic* (2021) 72 Cal.App.5th 158, 164 (*Gamboa*).) While the burden of persuasion is always on the moving party to prove the existence of an arbitration agreement with the opposing party by a preponderance of the evidence, the burden of production, however, may shift in a three-step process. (*Id.* at pp. 164–165.) "First, the moving party bears the burden of producing 'prima facie evidence of a written agreement to arbitrate the controversy.' [Citation.] The moving party 'can meet its initial burden by

5

attaching to the [motion or] petition a copy of the arbitration agreement purporting to bear the [opposing party's] signature.' [Citation.]  Alternatively, the moving party can meet its burden by setting forth the agreement's provisions in the motion.  [Citations.]  For this step, 'it is not necessary to follow the normal procedures of document authentication.' [Citation.]  *If the moving party meets its initial prima facie burden and the opposing party does not dispute the existence of the arbitration agreement, then nothing more is required for the moving party to meet its burden of persuasion*." (*Ibid.,* italics added.)

If the party moving to compel arbitration meets its initial prima facie burden, and the opposing party disputes the existence of an agreement to arbitrate the controversy, then in the second step, the burden shifts to the opposing party to "'identify a factual dispute as to the agreement's existence' and . . . present admissible evidence to support the existence of that factual dispute." (*Ramirez v. Golden Queen Mining Co., LLC* (2024) 102 Cal.App.5th 821, 832, citing *Iyere v. Wise Auto Group* (2023) 87 Cal.App.5th 747, 755 (*Iyere*).)  "If the opposing party meets its burden of producing evidence, then in the third step, the moving party must establish with admissible evidence a valid arbitration agreement between the parties.  The burden of proving the agreement by a preponderance of the evidence remains with the moving party." (*Id.* at pp. 165–166.)

## II.

### KNOLLS WEST MET ITS INITIAL BURDEN OF PRODUCING EVIDENCE OF THE PARTIES' AGREEMENT TO ARBITRATE JAMES'S INDIVIDUAL CLAIM

Whether a party moving to compel arbitration has satisfied its initial burden of production "presents a legal question subject to de novo review." (*Espejo, supra*, 246 Cal.App.4th at pp. 1056–1057, 1060.)  In moving to compel arbitration, Knolls West met its initial burden of production under the *Gamboa* burden-shifting framework because it produced a copy of the agreement bearing the signatures of not only James, but also of an

authorized representative of the "Company," namely that of Knolls West's payroll and human resources manager.[1] (See *Gamboa, supra*, 72 Cal.App.5th at p. 165 ["The moving party 'can meet its initial burden by attaching to the [motion or] petition a copy of the arbitration agreement purporting to bear the [opposing party's] signature'" or "by setting forth the agreement's provisions in the motion"]; see also *Bannister v. Marinidence Opco, LLC* (2021) 64 Cal.App.5th 541, 543–544 ["The party seeking arbitration can meet its initial burden by attaching to the petition a copy of the arbitration agreement purporting to bear the respondent's signature"].)[2]

In the respondent's brief, James argues Spring Valley (and not Knolls West) is the sole party that contracted with her in the agreement because Knolls West "is not mentioned anywhere in the body of the agreement." The interpretation of "'a written document to determine whether it is an enforceable arbitration agreement is a question of law subject to de novo review when the parties do not offer conflicting extrinsic evidence regarding the document's meaning.'" (*Franco, supra*, 39 Cal.App.5th at p. 227.)

Here, the agreement clearly states its contracting parties consist of "Company," defined in the agreement as Spring Valley *and* "all of its related entities and subsidiaries," on the one hand, and James, on the other. It is well established "'[t]he basic goal of contract interpretation is to give effect to the parties' mutual intent at the time of contracting,'" and in so doing "'"[t]he words of a contract are to be understood in

---

[1] An arbitration agreement is generally enforceable against a signatory, even if not signed by the party seeking to compel arbitration. (See *Serafin v. Balco Properties Ltd., LLC* (2015) 235 Cal.App.4th 165, 176 ["the writing memorializing an arbitration agreement need not be signed by both parties in order to be upheld as a binding arbitration agreement"].)

[2] Although not required to authenticate the agreement, Knolls West also produced evidence in the form of declarations by Amirian and Dehghanmanesh stating James and an authorized representative of Knolls West had indeed signed the agreement. In addition, those declarations showed Knolls West and Spring Valley share their two limited liability members, Matheson Chambers and David Johnson.

their ordinary and popular sense."'" (*Franco, supra*, 39 Cal.App.5th at p. 227.) The signature page of the agreement identifies Knolls West's human resources and payroll manager who signed the agreement as the "Authorized *Company* Representative" (italics added), thereby identifying Knolls West as an entity encompassed within the scope of the "Company" with which James has contracted. (See *ibid.* ["Furthermore, "'[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." (Civ. Code, § 1641.)'"].) James did not produce any extrinsic evidence showing the parties did *not* intend Knolls West to be included within the definition of Company, notwithstanding the language surrounding Knolls West's signature block on the last page of the agreement.[3]

Contrary to James's suggestion, there is no requirement the body of an arbitration agreement must therein identify the contracting parties by name to be enforceable. To the contrary, it is not uncommon for arbitration agreements in the employment context to not identify parties by name in the body of such agreements. (See e.g., *Franco, supra*, 39 Cal.App.5th at pp. 224–225 [provided arbitration agreement covered claims "relating to any aspect of Employee's employment with Employer"]; *Flores v. Nature's Best Distribution, LLC* (2016) 7 Cal.App.5th 1, 4 ["'In further consideration of the mutual benefits of the employment relationship between employee

---

[3] The clear language of the agreement viewed as a whole indicates Knolls West was a contracting party, coming within the scope of the agreement's own definition of the term "Company," and no extrinsic evidence was offered suggesting otherwise. We therefore do not further address James's arguments Knolls West was neither a related or affiliated entity in relation to Spring Valley, nor a third party beneficiary of the agreement, as such arguments are necessarily premised on the incorrect assumption the agreement did not itself refer to Knolls West as "Company." (See *Carolina Beverage Corp. v. Fiji Water Co., LLC* (May 30, 2024, B324609, B325931 & B326861) __ Cal.App.5th __ [2024 Cal.App. Lexis 411, *19] [referring to "core tenets of California contract law that parties to a contract . . . are empowered to define for themselves and through the contract's terms the rules that will govern their relationship [citation], and that the California courts will enforce—rather than alter—those terms"].)

and Company, employee and Company agree to submit all legal, equitable and administrative disputes to . . . binding arbitration'"].)

As Knolls West satisfied its initial burden of producing evidence of the existence of an arbitration agreement between it and James that covered the instant dispute, the burden of production shifted to James to challenge the enforceability of the agreement against her.  (See *Mission Viejo Emergency Medical Associates v. Beta Healthcare Group* (2011) 197 Cal.App.4th 1146, 1154 ["Once the moving party has established the existence of the arbitration agreement, the burden shifts to the party opposing arbitration to establish, by a preponderance of the evidence, the factual basis for any defense to enforcement"]; see also *Kinder v. Capistrano Beach Care Center, LLC* (2023) 91 Cal.App.5th 804, 815 ["Under the *Gamboa* framework, the moving party is entitled to a presumption, in the first instance, that the agreement to arbitrate is authentic"]; *Condee v. Longwood Management Corp.* (2001) 88 Cal.App.4th 215, 219 ["Once the petitioners had alleged that the agreement exists, the burden shifted to respondents to prove the falsity of the purported agreement"].)

III.

BECAUSE JAMES FAILED TO MEET HER BURDEN OF PRODUCTION, THE TRIAL COURT ERRED BY DENYING THE MOTION TO COMPEL ARBITRATION

In her opposition to Knolls West's motion to compel arbitration, James did not dispute the existence of the agreement, that she signed the agreement upon the commencement of her employment with Knolls West, that she and Knolls West intended, by entering that agreement, that claims arising out of her employment with Knolls West would be submitted to arbitration, or that individual PAGA claims, such as the instant

claim, fall within the scope of claims to be arbitrated under the agreement.[4] Instead, without offering *any* evidence in support of her opposition, James offered her argument the agreement was unenforceable by Knolls West against her.[5]

In *Iyere, supra*, 87 Cal.App.5th at page 755, the appellate court explained: "If the movant bears its initial burden, the burden shifts to the party opposing arbitration *to identify a factual dispute* as to the agreement's existence—in this instance, by disputing the authenticity of their signatures. To bear this burden, the arbitration opponent *must offer admissible evidence creating a factual dispute* as to the authenticity of their signatures. The opponent *need not prove* that his or her purported signature is not authentic, *but must submit sufficient evidence to create a factual dispute and shift the burden back to the arbitration proponent*, who retains the ultimate burden of proving, by a preponderance of the evidence, the authenticity of the signature." (Italics added.) "As to the existence of an agreement [to arbitrate], we review de novo the trial court's ruling [the] plaintiffs' evidence was sufficient to create a factual dispute shifting the burden of production back to [the moving party]." (*Id.* at pp. 755–756.)

Here, James did not offer *any* evidence in opposition to the motion, much less evidence that created a factual dispute regarding the existence and/or enforceability of the proffered arbitration agreement against her by Knolls West. For example, she did

---

[4] In the statement of decision, the trial court observed: "Plaintiff concedes arbitration of her individual PAGA claim is appropriate if the court finds defendant has standing to enforce the agreement." The court also noted: "Plaintiff does not dispute that her claims fall within the scope of [the] broad language" of the agreement.

[5] "According to *Rosenthal*[ *v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394], facts relevant to enforcement of the arbitration agreement must be determined '"in the manner . . . provided by law for the . . . hearing of motions."' (*Rosenthal, supra*, 14 Cal.4th at p. 413, quoting [Code Civ. Proc.,] § 1290.2.) This 'ordinarily mean[s] the facts are to be proven by affidavit or declaration and documentary evidence, with oral testimony taken only in the court's discretion.'" (*Hotels Nevada v. L.A. Pacific Center, Inc.* (2006) 144 Cal.App.4th 754, 761–762.)

not produce a declaration creating a factual dispute regarding the parties' understanding as to whether Knolls West fell within the definition of the term Company in the agreement.  She did not produce evidence even suggesting she and Knolls West, by signing the agreement, had not reached a meeting of the minds that they were entering into a binding arbitration agreement with each other.  She did not offer a declaration stating that she did not recall signing the agreement or that she would not have entered into an arbitration agreement with Knolls West.  Nor did she provide a declaration denying she ever signed the standalone, five-page arbitration agreement proffered by Knolls West, with its incomplete and irregular page numbering, largely blank penultimate page displaying a faint horizontal line, and "other oddities" in formatting.

As explained in *Iyere, supra*, 87 Cal.App.5th at page 755, James only had the burden to produce sufficient evidence that created or identified a relevant factual dispute to shift the burden of production back to Knolls West who retained the burden of proof; she did not have the burden to *prove* her side of the factual dispute.  (See *ibid.* ["To bear this burden, the arbitration opponent must offer admissible evidence"].)  And yet James did not produce any evidence in support of her opposition.[6]  Consequently, the burden of production never shifted back to Knolls West and "nothing more [was] required

---

[6]  See, in contrast, *Jones v. Solgen Construction, LLC* (2024) 99 Cal.App.5th 1178, 1198 [finding the moving party's evidence was not "'uncontradicted and unimpeached'" as to an agreement to arbitrate because of a declaration from the opposing party saying she did not sign or enter into the arbitration agreement]; *Trinity v. Life Ins. Co. of North America* (2022) 78 Cal.App.5th 1111, 1124–1125 [the plaintiff's "testimony that she did not recall agreeing to arbitrate by electronically clicking a 'Done' box, coupled with her declaration that she would not have accepted the job in 2008 had she known of the arbitration clause and her unknown testimony at the hearing, was sufficient to carry her burden in opposing a motion to compel"] fn. omitted; *Ruiz v. Moss Bros. Auto Group, Inc.* (2014) 232 Cal.App.4th 836, 840 [relying on plaintiff's declaration he "did not recall signing any arbitration agreement . . . and if he had been presented with an agreement that limited his ability to sue [the defendant] he would not have signed it"].

for [Knolls West] to meet its burden of persuasion." (*Gamboa*, *supra*, 72 Cal.App.5th at p. 165.)

In the statement of decision, the trial court did not cite *Gamboa*, *Espejo*, or *Iyere,* or otherwise apply the governing burden-shifting framework utilized in those cases. Instead, the court's ruling is based on an analysis that would have applied had the burden of proof shifted back to Knolls West, whereby "'[t]he trial court sits as a trier of fact, weighing all the affidavits, declarations, and other documentary evidence, as well as oral testimony received at the court's discretion, *to reach a final determination*.'" (*Gamboa, supra*, 72 Cal.App.5th at p. 164, italics added.) For example, the trial court explained its ruling denying the motion after a detailed evaluation of Amirian's and Dehghanmanesh's credibility and the weight it should give to various portions of their respective declarations. Therefore, because James failed to produce any evidence challenging the existence and/or enforceability of the agreement, the trial court erred by denying the motion.

But even if we were to assume for the purpose of analysis the governing burden-shifting framework does not apply, we arrive at the same result. As discussed *ante*, "'[i]nterpreting a written document to determine whether it is an enforceable arbitration agreement is a question of law subject to de novo review when the parties do not offer conflicting extrinsic evidence regarding the document's meaning.'" (*Franco, supra*, 39 Cal.App.5th at p. 227.) James did not offer any extrinsic evidence regarding the meaning of the agreement proffered by Knolls West and as noted, the trial court did not rely on the extrinsic evidence offered by Knolls West in the forms of Amirian's and Dehghanmanesh's declarations.

Applying general contract law principles, and taking the whole of the agreement together, "so as to give effect to every part" (*Franco, supra*, 39 Cal.App.5th at p. 227), the face of the agreement shows it was entered between James on the one hand, and Knolls West as a part of the defined term "Company," on the other hand. Therefore,

12

even were we to focus our review as a matter of strict contract interpretation, the trial court erred in denying the motion.

## DISPOSITION

The order denying the motion to compel arbitration is reversed. The matter is remanded to the trial court to grant the motion to compel arbitration of James's individual PAGA claim and issue a stay of the action pending the completion of arbitration. Appellant to recover costs on appeal.

MOTOIKE, J.

I CONCUR:

GOODING, J.

SANCHEZ, ACTING P. J., Dissenting.

I respectfully dissent. The right to petition the courts for redress of one's grievances is a fundamental constitutional right of every United States citizen. (*Chambers v. Baltimore & OHIO R.R.* (1907) 207 U.S. 142, 148.) "The right to sue and defend in the courts is the alternative of force. In an organized society it is the right conservative of all other rights, and lies at the foundation of orderly government. It is one of the highest and most essential privileges of citizenship." (*Ibid*.) The right to a jury trial in civil cases is also generally protected by the California Constitution. (Cal. Const., art. 1, § 16.) While that right can be waived in the form of an arbitration agreement, part of the gatekeeping role of the courts is to ensure that such waivers are established by competent evidence. The trial court found the evidence here failed to establish the existence of an arbitration agreement. I would affirm that finding.

This case presents a rare scenario in which the party moving to compel arbitration (defendant, Knolls West Post Acute, LLC; Knolls West) is not a named party in the arbitration agreement and the named party (Spring Valley Post Acute, LLC; Spring Valley) is not plaintiff Joanna James's employer and did not sign the agreement. This is not your ordinary arbitration case. And as I explain below, the ordinary rules need to be adapted to the unique circumstances of this case.

My colleagues in the majority opinion rely heavily on a burden-shifting scheme that some courts have applied to motions to compel arbitration. Under that scheme, the moving party seeking to enforce the arbitration agreement needs only to produce the agreement or recite its terms in order to shift the burden to the opposing party to produce evidence showing the agreement is unenforceable. (*Gamboa v. Northeast Community Clinic* (2021) 72 Cal.App.5th 158, 165.)

1

I am not aware, however, of any case to apply the burden-shifting scheme in a factual scenario like this, where the moving party is claiming to be an unnamed beneficiary of the agreement (as an "affiliated" or "related" entity of the named party) and there are substantial questions on the face of the agreement about which party is even entering into it, much less which is entitled to enforce it. The burden-shifting scheme was first introduced in *Condee v. Longwood Management Corp.* (2001) 88 Cal.App.4th 215 where the issue was simple and straightforward: whether the signatures on the arbitration agreement were authentic. (*Id*. at pp. 218-219.) Under *Condee*, the signatures are presumed authentic and the burden shifts to the opposing party to create a factual issue regarding authenticity. (*Id*. at p. 219; see *Kinder v. Capistrano Beach Care Center, LLC* (2023) 91 Cal.App.5th 804, 815 [the burden shifting scheme creates "a presumption, in the first instance, that the agreement to arbitrate is authentic"].) Such a scheme is helpful when the arbitration agreement (1) appears enforceable against the nonmoving party on its face, and (2) the opposing party's defense is based on circumstances within that party's personal knowledge (i.e., the facts and circumstances surrounding the signing of the arbitration agreement itself or whether the opposing party's signature is authentic).

But where, as here, the face of the arbitration agreement raises questions regarding whether it is valid or even applies to the parties in the case, and the moving party claims to be an unnamed beneficiary of that agreement, it makes far more sense either to jettison the burden-shifting scheme or to allow the opposing party to meet its burden by simply directing the court's attention to the flaws in the agreement. This is because the facts which would arguably permit the moving party to enforce the arbitration agreement, if any, are: (1) not apparent on the face of the agreement, (2) exclusively within the knowledge of the moving party, and (3) established, if at all, by extrinsic business entity documents within the sole control of the moving party. (See *Ronay Family Limited Partnership v. Tweed* (2013) 216 Cal.App.4th 830, 838-839 [third party "made a prima facie showing sufficient to allow them to enforce the arbitration

2

clause as third party beneficiaries"]; *City of Hope v. Bryan Cave, L.L.P.* (2002) 102 Cal.App.4th 1356, 1370 ["the burden is on the third party to prove the parties to the release agreement intended to benefit the third party"].)

Here, the arbitration agreement is facially flawed:  Knolls West is not a named party, and the actual contracting party (Spring Valley) did not sign the agreement. The majority opinion attempts to downplay this fact by relying on *Franco v. Greystone Ridge Condominium* (2019) 39 Cal.App.5th 221, 224-225 for the proposition that the employer need not be named in the arbitration agreement.  (Maj. opn. *ante*, at pp. 8-9.) In *Franco*, however, there was no other party named in the agreement, only the "Employer."  Had the agreement here contained that language and been signed by a representative of Knolls West, it might have been sufficient.  That was not the case here. The agreement named another entity entirely, i.e., Spring Valley, with no clear connection between the two entities established.  Moreover, *Franco* is inapt for another critical reason:  it did not address the burden shifting scheme the majority relies on.  My view is not that the present arbitration agreement is categorically unenforceable by Knolls West, only that the burden was on Knolls West to prove that it was an intended beneficiary of the contract.

In order to show that Knolls West was an intended beneficiary of this agreement, it needed to prove: (1) it was authorized to sign the agreement on behalf of Spring Valley, the named party; and (2) it is a "related" or "affiliated" entity to Spring Valley.  If either element of proof was missing, the motion to compel could not be granted.  In other words, if Knolls West (1) was authorized to sign on behalf of Spring Valley, but (2) was not a related entity, then it was not a beneficiary of the contract. Conversely, if it was (1) not authorized to sign on behalf of Spring Valley, (2) even if it was a related entity, then there is simply no enforceable contract between James and Spring Valley from which Knolls West could benefit.

3

Knolls West failed on both accounts, and the trial court correctly denied the motion.

First, there is no evidence in the record that Spring Valley authorized Knolls West to sign the agreement on its behalf. The only signatories were James and an authorized representative (i.e., the "Payroll/HR Mgr.") of *Knolls West*, not Spring Valley. In other words, the person signing the agreement as an "Authorized Company Representative" signed under the heading "Knolls West Post Acute," and no reference is made on the signature page to Spring Valley Post Acute. Once Knolls West put the arbitration agreement in evidence, the majority shifted the burden to James to produce evidence to dispute this point. (Maj. opn. *ante*, at p. 7.) But how could James know whether Knolls West was authorized to act as Spring Valley's agent in order to bind it to the agreement? All James could do was exactly what she did—alert the trial court to the discrepancy in the agreement between the named party (Spring Valley) and the signatory (Knolls West). The evidence on that issue is exclusively within Knolls West's (and/or Spring Valley's) control.[1]

Second, Knolls West presented no competent evidence it is related to or affiliated with Spring Valley. The evidence presented by Knolls West sought to prove it has common ownership with Spring Valley, i.e., the same two members own each limited liability company (LLC). But that evidence was flawed; it came in through two declarations, which were riddled with conclusory statements, lacked foundation, and failed to attach the relevant LLC formation and operating documents. By presenting such

---

[1] At oral argument, counsel for Knolls West suggested James could have conducted discovery to determine these facts. Placing a heavy burden of lengthy and costly discovery on James hardly seems equitable, however, given the burden to establish those facts was part of Knolls West's responsibility to establish the existence of an enforceable arbitration agreement as the moving party, and those facts were easily within its knowledge and control.

weak evidence when much stronger evidence was at its disposal, Knolls West created a credibility issue that only the trial court could resolve. (Evid. Code, § 412 ["If weaker and less satisfactory evidence is offered when it was within the power of the party to produce stronger and more satisfactory evidence, the evidence offered should be viewed with distrust"].) The court below resolved that credibility issue against Knolls West. I would defer to that factual finding.

But even assuming the fact of common ownership was established, under Corporations Code section 150, affiliate status depends on common *control*. That section states: "A corporation is an 'affiliate' of, or a corporation is 'affiliated' with, another specified corporation if it directly, or indirectly through one or more intermediaries, controls, is controlled by or is under common control with the other specified corporation." (*Ibid*.) Nothing in the supportive declarations establishes which, if either of the two members, had a controlling interest in either Spring Valley or Knolls West, or both. "Control typically involves authority to direct the management of an entity. [Citation.] Assessing whether someone controls an entity implicates corporate formalities." (*Otay Land Co., LLC v. U.E. Limited, L.P.* (2017) 15 Cal.App.5th 806, 857.) For example, under Corporations Code section 17704.07, control of an LLC depends on whether the articles of organization denominate it as member controlled or manager controlled, with differing designations of power and control for each type. Those formalities demonstrating who controlled which LLC were not in evidence here, as Knolls West did not inform the trial court what types of LLC it and Spring Valley were. Consequently, Knolls West failed to demonstrate that it is an unnamed beneficiary of the arbitration agreement as an affiliate of Spring Valley.

Further, it makes no sense to require James to produce that evidence. How would James know anything about the structures and operations of the two business entities (only one of which was her employer), such as who owned them, in what

5

percentages, and who controlled them?  If Knolls West truly was related to Spring Valley, then Knolls West should have had no trouble producing such a declaration (including appropriate business entity documentation demonstrating common ownership and control) either from a knowledgeable company representative or, better yet, from a common member of Spring Valley and Knolls West.  Yet the record is bereft of any such evidence.

Knolls West also presented evidence that it and Spring Valley hired the same third party vendor, Meridian Management Services, to do the administrative work of operating their respective skilled nursing facilities.  But this information proves nothing.  The mere use of a common vendor by the LLCs is inadequate to prove they are related or affiliated.

Thus, whether the burden-shifting scheme is employed or not, Knolls West, as the moving party, was ultimately required to establish it had a valid, enforceable arbitration agreement with James.  For the reasons stated above, Knolls West failed to do so, in my opinion.

Accordingly, I would affirm the trial court's order denying the motion to compel arbitration.


SANCHEZ, ACTING P. J.

6