Filed 4/28/25  Perez v. L'Abri Management CA2/1

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| DESIREE PEREZ,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>L'ABRI MANAGEMENT, INC.,<br><br>　　　Defendant and Appellant. | B339831<br><br>(Los Angeles County<br>Super. Ct. No. 23STCV18655) |

　　　APPEAL from an order of the Superior Court of Los Angeles County, Kenneth R. Freeman, Judge.  Reversed with directions.

　　　Parker, Milliken, Clark, O'Hara & Samuelian, Gary Ganchrow and Gary Tokumori for Defendant and Appellant.

　　　Payne Nguyen, Cody Payne and Kim Nguyen for Plaintiff and Respondent.

———————————

# INTRODUCTION

L'Abri Management, Inc. (L'Abri) appeals from the denial of its motion to compel arbitration of claims asserted by its former employee Desiree Perez. The trial court concluded that the parties had not entered into a binding arbitration agreement because only Perez, and not L'Abri, had signed the agreement at issue when she was onboarded.

But "the presence or absence of a *signature* [is not] dispositive; it is the presence or absence of evidence of an *agreement* to arbitrate which matters." (*Banner Entertainment, Inc. v. Superior Court* (1998) 62 Cal.App.4th 348, 361.) Because a signature is but one form of such evidence, "the writing memorializing an arbitration agreement need not be signed by both parties in order to be upheld as a binding arbitration agreement." (*Serafin v. Balco Properties Ltd., LLC* (2015) 235 Cal.App.4th 165, 176.)

Here, L'Abri manifested its assent to the arbitration agreement by presenting it to Perez when it hired her under circumstances indicating L'Abri intended to be bound by the agreement if Perez also agreed. Under standard principles of contract formation, L'Abri made an offer to Perez when it presented her with the arbitration agreement in connection with onboarding her as an employee. Perez accepted the offer by signing the document, and at that point the parties had entered a valid agreement.

Thus, the trial court erred in denying L'Abri's motion to compel arbitration based on the lack of an agreement to arbitrate. The court did not consider Perez's arguments that the agreement should not be enforced because its terms are unconscionable, and the parties have not addressed that issue on

2

appeal.  Therefore, we reverse and remand with directions for the trial court to consider whether the arbitration agreement is unconscionable.

### FACTUAL AND PROCEDURAL BACKGROUND

**A.    Perez Is Hired and Signs an Arbitration Agreement During L'Abri's Onboarding Process**

On October 3, 2022, Perez started working for L'Abri, which is a property management company.

On Perez's first day of work, L'Abri provided her with electronic access to various onboarding paperwork, including an employment agreement and a separate arbitration agreement. Perez signed the employment agreement on her first day of work, and L'Abri also signed it.  Perez signed the arbitration agreement four days later.  L'Abri never signed the arbitration agreement, even though it contained a signature block for a company representative.

The employment agreement provided that it, "along with the Company's Agreement to Arbitrate, constitutes the entire agreement between [L'Abri] and [Perez] pertaining to the matters addressed in it" with certain exceptions not relevant here.  The arbitration agreement provided, in relevant part, that L'Abri "and all of its related entities and subsidiaries, (hereinafter 'Company') and Perez . . . ('Employee') voluntarily agree to the resolution by arbitration of all claims, disputes, and/or controversies (collectively 'claims'), whether or not arising out of Employee's employment or the termination of employment, that Company may have against Employee or that Employee may have against Company . . . ."

The arbitration agreement also included a "[c]lass and [r]epresentative [a]ction [w]aiver," which provided, "Employee

3

and Company expressly intend and agree that each will forego pursuing any covered dispute on a class, collective, or representative basis and will not assert class, collective, or representative action claims against the other in arbitration or otherwise.  Employee and Company shall only submit their own, individual claims in arbitration.  Employee and Company shall be entitled to seek dismissal of any class, collective, or representative claims that the other party attempts to bring and may assert this Agreement as a defense in any proceeding in which class, collective, or representative actions are brought." The agreement excluded from this waiver "representative actions under the California Private Attorneys General Act [(PAGA)] or any class, collective, or representative claims that cannot be waived as a matter of law."

The arbitration agreement indicated that Perez was not required to enter it as a condition of employment.  Right after the provision explaining the agreement was voluntary, the agreement stated that, "EMPLOYEE UNDERSTANDS THAT BY SIGNING THIS AGREEMENT, COMPANY AND EMPLOYEE HAVE BOTH WAIVED THEIR RIGHT TO A JURY TRIAL AND THEIR RIGHT TO ASSERT CLASS OR COLLECTIVE ACTION CLAIMS WITH RESPECT TO ALL CLAIMS COVERED BY THIS AGREEMENT," followed by a place for the employee alone to initial (which Perez did).

4

**B.     Perez's Employment Ends and She Sues for Alleged Wage Violations**

Perez's employment with L'Abri lasted about two weeks. The record does not disclose whether Perez or L'Abri terminated the employment.

On August 7, 2023, Perez sued L'Abri, asserting various wage claims individually and on behalf of a would-be class of current and former L'Abri employees. On January 25, 2024, Perez filed a first amended complaint.[1]

**C.     L'Abri Seeks to Compel Arbitration**

*1.     L'Abri's Motion*

On February 23, 2024, L'Abri filed a motion to compel arbitration, stay all court proceedings, and dismiss Perez's class action claims. Based on the arbitration agreement, L'Abri argued that Perez was required to arbitrate her individual claims and was precluded from asserting class claims. L'Abri submitted a copy of the arbitration agreement signed only by Perez; L'Abri's human resources/payroll manager authenticated the agreement and averred, "Once an employee signs an arbitration agreement, we [*sic*] that signed agreement into the employee's personnel file and maintain that agreement in the normal course of its [*sic*] business."

*2.     Perez's Opposition*

In her opposition, Perez contended that the arbitration agreement was unenforceable because it was procedurally and

---

[1] The first amended complaint included a PAGA claim under Labor Code section 2698 et seq., which had not been asserted in the original complaint.

5

substantively unconscionable. As relevant here, Perez argued that the agreement was procedurally unconscionable because it was not executed by L'Abri and therefore L'Abri had not manifested its assent.

In a declaration, Perez averred she was rushed to sign "a large number of documents" which L'Abri provided her electronically, and L'Abri's human resources/payroll manager "t[o]l[d] [Perez] that [Perez] was not able to start until all the documents were completed and received." Perez also averred she "believed that if [she] did not sign the documents, [she] would lose [her] job."

### 3. *L'Abri's Reply*

In reply, L'Abri asserted that, even though it had not physically signed the arbitration agreement, it was bound because "[t]he agreement clearly identifies L'Abri in the text, contains a signature block for L'Abri, and . . . was provided to [Perez] along with other L'Abri on-boarding documents."

## D. The Trial Court Denies L'Abri's Motion to Compel Arbitration

Before the hearing on the motion, the court issued a tentative ruling to deny the motion on the ground the arbitration agreement was not enforceable because L'Abri's signature block was blank. The court reasoned that "there has been no outward manifestation or expression of acceptance by [L'Abri]. Absent this information, there has objectively been no mutual assent, and therefore, [L'Abri] has not demonstrated a valid arbitration agreement exists."

At the hearing L'Abri argued that it had manifested assent to the arbitration agreement by indicating in the employment agreement that it was part of the parties' overall contract, and by

6

presenting the arbitration agreement to Perez as part of its "onboarding process." Perez argued that the arbitration agreement indicated the parties would assent to the agreement by signing the document, and, thus, L'Abri's failure to sign was dispositive. At the conclusion of the hearing, the court took the matter under submission.

The court later denied the motion on the ground L'Abri had not shown the parties had entered into an arbitration agreement for the reasons set forth in the tentative ruling. The court did not address Perez's arguments that the arbitration agreement was unconscionable. This order is appealable (Code Civ. Proc., § 1294, subd. (a)), and L'Abri timely sought review.

## DISCUSSION

### A. Standard of Review

"Under 'both federal and state law, the threshold question presented by a petition to compel arbitration is whether there is an agreement to arbitrate.' [Citation.]" (*Cruise v. Kroger Co.* (2015) 233 Cal.App.4th 390, 396, italics omitted.) "The party seeking to compel arbitration bears the burden of proving by a preponderance of the evidence an agreement to arbitrate a dispute exists. [Citations.]" (*Trinity v. Life Ins. Co. of North America* (2022) 78 Cal.App.5th 1111, 1120.)

The relevant facts in this case are undisputed and, thus, we assess de novo whether a valid agreement to arbitrate was formed. (*Serafin v. Balco Properties Ltd., LLC*, *supra*, 235 Cal.App.4th at p. 173.)

### B. L'Abri Established a Valid Arbitration Agreement

Applying the standard rules of contract formation (*Sandquist v. Lebo Automotive, Inc.* (2016) 1 Cal.5th 233, 244

7

[standard rules of contract formation apply to arbitration agreements]), we conclude that L'Abri manifested its assent to the arbitration agreement when it presented the agreement to Perez as part of the employee onboarding process and requested that she sign it.  In short, L'Abri made an offer to enter the arbitration agreement which Perez accepted by signing.

An essential element of any contract is mutual consent. (Civ. Code, §§ 1550, 1565.)  " 'Mutual assent usually is manifested by an offer communicated to the offeree and an acceptance communicated to the offeror.  [Citation.]  " ' "An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." ' [Citations.]" [Citation.]' " (*Lopez v. Charles Schwab & Co., Inc.* (2004) 118 Cal.App.4th 1224, 1230.)  "In order for acceptance of a proposal to result in the formation of a contract, the proposal 'must be sufficiently definite, or must call for such definite terms in the acceptance, that the performance promised is reasonably certain.' [Citation.]" (*Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 811.)

" '[W]hether a particular communication constitutes an operative offer, rather than an inoperative step in the preliminary negotiation of a contract, depends upon all the surrounding circumstances.  [Citation.]  The objective manifestation of the party's assent ordinarily controls, and the pertinent inquiry is whether the individual to whom the communication was made had reason to believe that it was intended as an offer.  [Citations.]' [Citation.]" (*Lopez v. Charles Schwab & Co., Inc.*, *supra*, 118 Cal.App.4th at p. 1230.)

8

Here, viewed objectively, the circumstances show both parties understood that L'Abri intended the arbitration agreement as an offer. The agreement, as presented to Perez, was complete, with no terms left for future negotiation or otherwise missing. In other words, it was " 'sufficiently definite . . . that the performance promised is reasonably certain.' [Citation.]" (*Weddington Productions, Inc. v. Flick*, *supra*, 60 Cal.App.4th at p. 811.) Moreover, the circumstances show that L'Abri was willing to be bound by the agreement. The terms of the agreement imposed mutual obligations on Perez and L'Abri. L'Abri presented the arbitration agreement to Perez for her to sign as part of L'Abri's standard hiring process. Although the parties may dispute whether Perez had a choice to enter the agreement—the arbitration agreement indicated that it was not required as a condition of employment, but Perez averred she "believed" that she was required to sign all the documents presented to her—there is no dispute that L'Abri expressed its willingness to enter the agreement. Lastly, there is no evidence that L'Abri proposed the agreement as a draft contract whose final terms would still need to be negotiated; indeed, Perez averred that she was not "given the option . . . to request or make any modifications to any of the documents [she] signed."

Therefore, by presenting the arbitration agreement L'Abri made a contractual offer to Perez, which Perez accepted by signing the agreement. As a result, the trial court erred in concluding that L'Abri had not manifested its assent. (See *Fuentes v. Empire Nissan, Inc.* (2023) 90 Cal.App.5th 919, 933 [although an employer did not sign an arbitration agreement, "[it] certainly assented to its own arbitration agreement—the agreement that it drafted and required [the employee] to sign and

that it now is trying to enforce"], review granted Aug. 9, 2023, S280256; *Cruise v. Kroger Co., supra*, 233 Cal.App.4th at pp. 397-398 [employer intended to be bound by an arbitration provision in its employment application despite not signing the application].)

Perez contends that, under the language of the arbitration agreement stating "EMPLOYEE UNDERSTANDS THAT <u>BY SIGNING THIS AGREEMENT</u>, COMPANY AND EMPLOYEE HAVE BOTH WAIVED" jury trial and class/collective action rights (underlining added), the agreement did not become binding until both parties signed it. Perez further reasons, as did the trial court, that the presence of signature blocks at the end of the agreement for both Perez and a representative of L'Abri also indicates that L'Abri could only manifest its assent by signing.

We are not persuaded. The arbitration agreement nowhere provides that it would not be effective unless it was signed by a L'Abri representative. The contractual language on which Perez relies is an acknowledgment by Perez that she understands the rights she is waiving, and is directly followed by a place for her, and only her, to initial. It does not state that there is no agreement unless both parties sign the document. Likewise, the general presence of a signature block, a common feature of contracts, cannot reasonably be interpreted to contradict the objective signs that L'Abri intended to be bound by the arbitration agreement if Perez also agreed.

Were the situation reversed and it was Perez seeking to enforce the arbitration agreement, we would interpret the agreement to bind L'Abri for the reasons discussed. "We see no reason to reach a different result when [L'Abri] is the one seeking arbitration." (*Roman v. Superior Court* (2009) 172 Cal.App.4th 1462, 1473.) Indeed, the interpretation urged by Perez would

10

create pernicious incentives.  L'Abri could in effect reserve for itself the option to accept the agreement, reject it, or possibly wait to decide, even while requiring the employee to manifest their assent.  Such a result would violate the principles that we should construe a contract to "make it lawful, operative, definite, reasonable, and capable of being carried into effect" (Civ. Code, § 1643) and to "avoid an interpretation which will make a contract extraordinary, harsh, unjust, or inequitable" (*Strong v. Theis* (1986) 187 Cal.App.3d 913, 920; see generally *Barroso v. Ocwen Loan Servicing, LLC* (2012) 208 Cal.App.4th 1001, 1013 [relying on these interpretive principles to reject construction of contract under which "[the defendant loan servicing company] would have sole control over the formation of the contract despite [the borrower]'s full performance, simply by refusing to return a signed copy [of the contract] to [the borrower]"]).

In theory, an employee could avoid this unfair and unreasonable result by retracting their assent, because under Perez's interpretation the *employee* would in effect be making an offer which he or she could withdraw.  However, the employee would have no reason to know that was an option unless the contract conveyed that L'Abri was not bound absent its signature, which this agreement does not.  Thus, we decline to adopt Perez's interpretation.  (See *Angell v. Rowlands* (1978) 85 Cal.App.3d 536, 542 [concluding husband was bound by a sales contract despite a blank signature block for his wife because "a contract is invalid if not signed by all parties purportedly bound *only when it is shown*, either *by parol or express condition*, that the contract was not intended to be complete until all parties had signed" (second italics added)].)

11

*Banner Entertainment, Inc. v. Superior Court*, *supra*, 62 Cal.App.4th 348, which the trial court cited and upon which Perez relies, does not compel a different result. As previously noted, the *Banner* court recognized that "the presence or absence of a *signature* [is not] dispositive" when determining whether the parties agreed to arbitrate. (*Id*. at p. 361.) *Banner* involved instead an arbitration provision in a *draft* agreement. That draft agreement was proposed in a cover letter that stated, "this agreement *when signed by the parties hereto* will constitute a legal and binding obligation of the parties," after which the parties continued to negotiate the terms of their agreement and did not sign the prior draft agreement. (*Id*. at p. 354.) Unsurprisingly, the *Banner* court found this did not evince an agreement to arbitrate. (*Id*. at p. 361.)

The facts here are quite different. The arbitration agreement between L'Abri and Perez was final, not a draft. The parties did not continue negotiating after the arbitration agreement was sent to Perez. And finally, the arbitration agreement does not provide that L'Abri is bound only if its representative signs the agreement, nor is there any evidence of any communication between L'Abri and Perez during the employee onboarding process indicating that L'Abri would not be bound by the arbitration agreement unless its representative signed the agreement.

In conclusion, the trial court erred in finding that the parties' arbitration agreement was not enforceable because L'Abri had not manifested its assent. The court did not consider Perez's arguments that the arbitration agreement was unenforceable because it was unconscionable, and the parties

have not addressed this issue in this appeal.  Accordingly, we remand for the court to consider Perez's unconscionability claims.

## DISPOSITION

We reverse the trial court's order denying L'Abri's motion to compel arbitration, with directions for the trial court to consider Perez's claim that the parties' arbitration agreement is unconscionable.  L'Abri is awarded its costs on appeal.

NOT TO BE PUBLISHED


WEINGART, J.


We concur:



BENDIX, Acting P. J.



M. KIM, J.